Robinson, J.
The determination of this case is dependent upon the interpretation of Section 8988, General Code (69 O. L., 27), as in force at the time the shipments were made.
The section then read: “No company, or person owning, controlling, or operating a railroad in whole or part within this state, shall charge or receive for transportation of freight for any distance within this state a larger sum than is charged by the same company or person for the transportation in the same direction, of freight of same class or kind, for an equal or greater distance over the same road and connecting lines of road.”
It is admitted that the railroad companies received from the assignors of the plaintiffs in error for shipment over their lines from Toledo to Kiefersville and Elm Center, via Continental, 15 cents more than the adopted and published rate from To *161 ledo to Fostoria, via Continental, and that the distance from Toledo to Fostoria, via Continental, is a greater distance over the same road and connecting lines of road. The only reason assigned by the public utilities commission and the respondent railroad companies why the 15 cents charged and received in excess of the rate to Fostoria should not be held to be an overcharge is that no furnace slag has ever been shipped from Toledo to Fostoria, via Continental, at the 50-cent rate adopted and published by the railroad companies, and it is their contention that they are not to be held responsible for the 50-cent rate to Fostoria, because of the fact that no one. had ever exercised the right. to have his freight shipped from Toledo to Fostoria, via Continental, and that therefore the 50-cent rate to Fostoria had never been charged. In support of their position they cite the decision of the interstate commerce commission in Missouri & Kansas Shippers Assn. v. M., K. & T. Ry. Co., 12 I. C. C., 483. In that case there was involved a situation similar to the situation in this case in that the published tariffs covered rates on hay from points in Kansas to Kansas City and St. Joseph, Missouri — Kansas City being an intermediate point between the points in Kansas and St. Joseph, Missouri, and on the same line. "When the rates were first published there was no conflict between the long and short haul clause. No hay moved from points in Kansas to St. Joseph, but did move from points in Kansas to Kansas City, and the rate to Kansas City was revised and raised. Applications for a refund were made by shippers, and the interstate commerce commission held in part as follows:
*162 “Although, it is clear that the Class C rate was a paper rate only, so far as hay was concerned, and that the breach by defendant of the provisions of Section 4 was therefore purely technical and in no sense substantial, the object of this petition is to take advantage of the situation and to secure reparation on shipments that moved to Kansas City while the defendant inadvertently permitted its tariffs to remain in that condition.
“While its procedure is to some extent judicial in nature, the Commission is essentially an administrative body; and in the adjustment of contentious proceedings of this kind it ought to examine into the real substance of the matter unembarrassed by considerations that are purely technical. Looking at the complaint from this point of view, it seems to us wholly without merit. We are unable to accept a merely theoretical or paper rate, for the longer haul, that has not been used and was unknown either' to the defendant or to the complainant, until casually discovered after it had been the published rate for some years, as affording a just basis for an order for reparation on shipments made to an intermediate point at a slightly higher rate.”
The provision of the federal statute in force when the cause of action accrued in the above case was in part as follows: “It shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance.”
*163 "Were this decision of the interstate commerce commission that of a federal court, or of the court of last resort of any of the states, we might attempt to distinguish it upon the difference in language of the federal statute and our Section 8988, General Code, hut in view of the fact that the commission does not base its decision upon an interpretation of the law, but rather upon its opinion of the justness of applying the law to the particular case, and in view of its statement in its opinion that it was acting essentially as an administrative body and not as a judicial body and felt constrained to examine into the real substance of the matter unembarrassed by considerations that are purely technical, we are content to pass the case with the observation that whatever may be the powers of the interstate commerce commission it is not within the province of the public utilities commission, or of the courts of the state of Ohio, to pass upon the wisdom of this, or any other legislation, or to refrain from the application of statutory law, simply because in the opinion of the commission, or in the opinion of the court, its application will not mete out what the commission or the court may deem exact justice. If the rigor of the statute is such that it ought to be tempered it must be accomplished by that branch of the government having legislative power.
We have examined the other cases cited by the public utilities commission and the railway companies and do not find them helpful or applicable.
The Code requires railroads to file with the public utilities commission all rates, fares and charges for transportation established and in force (Section 505, General Code), and requires the publication of the *164 rates to be charged for transportation of property and the keeping of copies in such form and place as to be accessible for inspection by the public in every depot, station and office of such railroad (Section \506, General Code), and that “no railroad shall charge, demand, collect or receive a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith, than is specified in such printed schedules, including schedules of joint rates, as being then in force. The rates, fares and charges named therein shall be the lawful rates, fares and charges until they are changed as provided in this chapter.” (Section 510, General Code.) From which it is apparent that it was the purpose of the legislature to provide a system of rates as near as possible in proportion to the length of the haul, and to prevent discrimination against points having no competitive lines in favor of points having competitive lines, it having been demonstrated by experience that at points having competitive lines the competition insured to the shipper a reasonably low rate, and in many instances a rate so low that it became necessary for the transportation company to charge a rate at other points in excess of a reasonable rate to compensate for the unreasonably low rate at the points of competition; and it was in part to remedy that situation that this legislation was enacted. In requiring the adoption, filing and publishing of its schedule of rates, and that the published rate and no other should be charged, the legislature was seeking not only to provide against discrimination between shippers from the same point, but by Section 8988, General Code, against discrimination between *165 localities, and the legislature having adopted a detailed and comprehensive plan whereby all persons transacting business with the railroad company were informed of the rates to be charged between given points, and having provided that such rate and no other was to be charged, it is not reasonable to assume that the validity or potentiality of such rate was dependent at all upon its use or non-use, or that a shipper before reliance upon such rate should be required to ascertain with reference thereto any fact other than that it was the published schedule of the company. In using the word “charged” in Section 8988, General Code, the legislature used it in the same sense that it used the word “charges” in Section 510, General Code, and in the same sense that it used “rates” and “fares” in that section, and had in contemplation the rate published in the schedule, the rate which the railroad company had bound itself to charge by the adoption of the schedule. This interpretation is in harmony with the interpretation of a provision of the Constitution of California, similar to our Section 8988, General Code, by the supreme court of that state, in the case of California Adjustment Co. v. Atchison, Topeka & Santa Fe Ry. Co., 179 Cal., 140, where the court used this language at page 153: “Nor do we think it material whether, when the shipments to intermediate points complained of as excessively charged for were made, no contemporaneous shipment to the more distant point was made. Under the constitutional provision the legitimate maximum charge for the shorter haul is the charge the carrier makes for the longer one, and it is only necessary to show in proof of an illegal discrimination that the shipper *166 paid a larger sum for the short haul than the defendant would have charged for the longer one. Actual shipment for the longer distance is not required to he shown. All that is required is a showing that the defendant held out and published to the shipping world that it would charge certain rates for the transportation of a certain class of merchandise from San Francisco to Los Angeles. This was shown, and, when shown, for the purpose of determining whether discrimination was practiced or not, the rates so held out to be charged are deemed in law to have been charged. ’ ’ Our attention has been called to no other decision in point by a court of last resort.
It is significant that the legislature in Section 8988, in defining the thing a railroad company shall not do, used the words “charge or receive,” but in defining the standard by which the conduct of the railroad company was to be measured did not use the words “has charged or received,” as the construction contended for by the public utilities commission and the respondent railroad companies would require, but omitted the word “receive” or “received” and used the words “is charged,” indicating a present status rather than a present or past act.
The finding of the public utilities commission will be reversed and this cause remanded to it for further proceedings in accordance herewith.

Order reversed.

Marshall, C. J., Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.