[Sac. No. 2584.   In Bank.—October 5, 1918.]

## CALIFORNIA ADJUSTMENT COMPANY (a Corporation), Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

COMMON CARRIERS—RECOVERY OF FREIGHT OVERCHARGE FROM RAILROAD CORPORATION—JURISDICTION OF STATE COURTS.—A shipper of freight over a railroad who has been compelled to pay a larger amount for an intermediate or short haul shipment than the carrier is charging for a longer haul, and who claims reparation therefor, is not required to first apply to the railroad commission and have it determine the amount of reparation to which he is entitled and obtain an order requiring its payment by the carrier, but may prosecute an action in the courts under the authority of section 73, subdivision a, of the Public Utilities Act, which authorizes an aggrieved party to prosecute an action in the courts for any loss or injury arising from a failure of a carrier to do any act or thing required to be done by the constitution, or any law of the state, or any order or decision of the commission.

ID.—CONSTITUTIONAL LAW—LONG AND SHORT HAUL CLAUSE.—Section 21, article XII, of the constitution, as it stood before the amendment of October 10, 1911, prohibiting discrimination in charges or facilities by railroads or other transportation companies was not in conflict with the commerce clause of the federal constitution, because in the opening clause thereof, reference was made to transportation of freight or passengers "within this state or coming from or going to another state," since the subsequent clauses, which were entirely independent and severable from it, contained no reference to interstate commerce and were complete in their prohibition as to long and short hauls.

ID.—VIOLATION OF CONSTITUTIONAL PROVISION—RIGHT OF ACTION FOR DAMAGES—STATUTES.—A right of action for damages for a violation of the long and short haul clause of the constitution is expressly conferred by the acts of 1909 (Stats. 1909, p. 499), the act of 1911 (Stats. 1911, p. 13), and the Public Utilities Act (Ex. Sess. 1911, p. 18), regardless of the existence of such right at common law.

ID.—FIXING RATES—POWER OF RAILROAD COMMISSION.—While it is true that during the period from 1879 to the time of the amendment of October 10, 1911, to section 21, article XII, of the constitution, the railroads were powerless to fix rates themselves and the only authority to do so was vested under the constitution in the railroad commission, still all the commission was authorized to do was to fix reasonable rates, and was without power to fix rates discriminatory as to a short or long haul.

Id.—Deviation from Long and Short Haul Clause—Procedure.—The amendment of October 10, 1911, to article XII, section 21, of the constitution gives the power to authorize a deviation from the prohibition of the constitution only upon the application of the carrier, and after an investigation by the commission, and relief can only be granted after such investigation and by an order finally made on the application approving the rates which constitute the deviation.

Id.—Recovery of Illegal Freight Charges—Payment Without Protest—Right not Affected.—The right to maintain an action to recover an illegal freight charge is not affected by the fact that the payment was made without protest, where payment was compelled in order to obtain the shipment, and the carrier admitted that without payment the shipment could not have been obtained.

Id.—Evidence—Illegal Discrimination.—In order to sustain a claim for discrimination, it is not necessary that when the shipment to an intermediate point was made for which the higher rate was charged, there were contemporaneous shipments made to the more distant points, since under the constitutional provision the legitimate maximum charge for the shorter haul is the charge for the longer one, and all it is necessary to show is that the shipper paid a larger sum for the short haul than the carrier would have charged for the longer one.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. W. Camp, U. T. Clotfelter, M. W. Reed, and Henshaw, Block & Goldberg, for Appellant.

Hoefler, Cook, Harwood & Morris, and Alfred J. Harwood, for Respondent.

LORIGAN, J.—This is an appeal by the defendant from a judgment against it for $34,242.31. The complaint set up 15,207 causes of action, each based on the alleged violation by defendant of the long and short haul clause of the constitution of this state; and representing an alleged illegal overcharge collected by defendant from shippers of freight over its road, the claim for damages thereon against the defendant having been by said shippers assigned to plaintiff. The freight shipment in each instance was over the road of the defendant from San Francisco to some point or station along the line between San Francisco and Los Angeles, and the allegation

was that the rate charged, demanded, and paid on each shipment to said intermediate point exceeded the rate contemporaneously charged for like shipment from San Francisco to Los Angeles. The demand in each cause was for the difference between the through rate from San Francisco to Los Angeles and the rate paid, and the total amount of these excessive charges on the 15,207 shipments amounted to about twenty-five thousand dollars with interest. Many of these freight shipments were made before October 10, 1911, and the, rest after that date and up to June 12, 1912. The significance of the date of October 10, 1911, it may be mentioned here, is that on that date the long and short haul clause of the state constitution was amended. As it stood before October 10, 1911, that clause (section 21, article XII) read:

"No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company or individual, shall be delivered at any station, landing, or port, at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port, or landing. Excursion and commutation tickets may be issued at special rates."

As amended October 10, 1911, said section 21 reads:

"No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state. It shall be unlawful for any railroad or other transportation company to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates: Provided, however, that upon application to the railroad commission provided for in this constitution such company may, in special cases, after investigation, be authorized by such commission to charge less

for longer than for shorter distances for the transportation of persons or property, and the railroad commission may from time to time prescribe the extent to which such company may be relieved from the prohibition to charge less for the longer than for the shorter haul. . . .''

Another section amended at the same time and applicable to the matter under consideration here is section 22 of said article XII, which, as amended, is as follows:

''. . . No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution. The provisions of this section shall not be construed to repeal in whole or in part any existing law not inconsistent herewith, and the 'Railroad Commission Act' of this state, approved February 10, 1911, shall be construed with reference to this constitutional provision and any other constitutional provision becoming operative concurrently herewith. And the said act shall have the same force and effect as if the same had been passed after the adoption of this provision of the constitution and of all other provisions adopted concurrently herewith, except that the three commissioners referred to in said act shall be held and construed to be the five commissioners provided for herein.''

Defendant in its answer, among other things, set up several defenses, one of which was that all rates collected for transportation of each and all shipments described in the causes of action were rates fixed by the railroad commission of the state pursuant to section 22, article XII, of the constitution as it stood from the year 1879 up to October 10, 1911, and that such rates were at the time of their collection and are now conclusively just and reasonable and the only lawful rates. As a further separate defense defendant set up that on or about October 26, 1911, it applied to the railroad commission of the state under section 21, article XII, as amended October 10, 1911, for permission to maintain the higher rates at intermediate points and to maintain lower rates from San Francisco to Los Angeles for all shipments moving after

October 26, 1911, and that on or about February 15, 1912, the railroad commission, after investigation, made its order permitting the defendant to maintain such higher and lower rates and that such order has ever since been in full force and effect. As to these defenses the findings of the court were against them.

Preliminarily to considering the points presented by appellant for a reversal, it may be stated that an action—*California Adjustment Co.* v. *Southern Pac. Co.*, 226 Fed. 349—practically identical with this but against another transportation company for similar overcharges—was commenced in the district court of the United States about the time this suit was instituted and judgment there went for plaintiff. That judgment was affirmed by the circuit court of appeal—*Southern Pac. Co.* v. *California Adjustment Co.*, 237 Fed. 954, [150 C. C. A. 604],—and on writ of *certiorari* the cause is now pending in the supreme court of the United States. All the points made here for a reversal were likewise urged in the United States district and circuit courts and determined adversely to the defendant there.

Proceeding now to a consideration of the grounds urged for a reversal.

1. It is insisted first that the court had no jurisdiction of this action. The specific point made under this general objection is that jurisdiction to award any reparation for deviation from the long and short haul clause is with the railroad commission in the first instance and not with the courts. In this regard it is urged that since March 23, 1911, when the Public Utilities Act [Stats. 1911 (Ex. Sess.), p. 18] went into effect a shipper who had been compelled to pay a larger amount for an intermediate or short haul shipment than the carrier, is charging for a longer haul, and who claims reparation therefor, must first apply to the railroad commission and have determined by it the amount of reparation to which he is entitled and obtain an order requiring its payment by the carrier, and until this has been done the courts have no jurisdiction in the matter.

Section 71 of the Public Utilities Act relied on is as follows:

"When complaint has been made to the commission concerning any rate, fare, . . . or commodity furnished or service performed by any public utility, and the commission has found, after investigation, that the public utility has charged

an excessive or discriminatory amount for such product, commodity or service, the commission may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection; *provided,* no discrimination will result from such reparation.''

It is upon this section that the appellant bases its point. It is quite clear, however, that this section applies only to cases in which an examination or investigation of evidence, as to some disputed matter of fact, is necessary in order to determine whether the public utility has or has not charged an excessive or discriminatory amount. It could not apply to a situation such as we have here where there is nothing for the railroad commission to investigate or examine. When a charge has been paid to a carrier, or a demand exacted in violation of the long and short haul clause of the constitution, there is nothing which can call for the action of the railroad commission. As the transaction fixes conclusively the liability of the carrier, the transaction itself furnishes the measure of damage which the shipper suffered as soon as it occurred, and the commission could neither decrease nor enlarge it. The constitution by prohibiting the discrimination determines conclusively that a violation of it shall be unwarranted and unjustified as matter of law, and as this is a legal question the commission can have nothing to do with it. It is a question for the courts, as is recognized by the Public Utilities Act itself, and the right of the shipper comes within the terms of section 73, subdivision a, of that act, which authorizes an aggrieved party to prosecute an action in the courts for any loss or injury arising from a failure of a carrier to do any act or thing required to be done by the constitution or any law of the state or any order or decision of the commission. (*Texas & Pacific Ry. Co.* v. *Abilene etc. Co.,* 204 U. S. 426, [9 Ann. Cas. 1075, 51 L. Ed. 553, 27 Sup. Ct. Rep. 350]; *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184, [Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893]; *Southern Pac. Co.* v. *California Adjustment Co., supra; Southern Pac. Co.* v. *Superior Court of Kern Co.,* 27 Cal. App. 240, [150 Pac. 397, 404].)

2. It is next claimed that section 21, respecting the long and short haul clause, both as it stood prior to October 10, 1911, and as amended on that date, is unconstitutional because in conflict with the commerce clause of the federal constitution.

This is based, as to section 21, article XII, as it stood prior to the amendment of October 10, 1911, in the opening clause thereof, which refers to transportation of freight or passengers "within this state, or coming from or going to any other state," which counsel claims was an attempt on the part of the state to regulate interstate commerce and therefore void. Conceding without deciding that this is true, still only the opening clause containing that language would be affected. None of the subsequent clauses of the constitutional provision are so related to or dependent on it as to be affected by the invalidity of this opening clause. On the contrary, they are independent and severable from it. They comprise in themselves a complete scheme of legislative prohibition against discrimination in charges by carriers as to long and short hauls, and this without aid from or connected with the opening clause of the provision at all and with it entirely eliminated. These subsequent clauses contain no reference to interstate commerce and are complete in their prohibition as to long and short hauls. True, they do not limit the prohibition in terms to transportation within the state, but as that was the sole territorial extent to which they could apply the construction must be that they were intended only to apply to it. As far as this same point is urged against the constitutional provisions as amended on October 10, 1911, it is entirely without merit, for the simple reason that there is not the slightest reference anywhere in the constitutional provisions to interstate transportation.

3. The next point presented is that neither by common law nor statute is an action for damages for a violation of a long and short haul clause given. There is no necessity for discussing both grounds urged by the appellant. If the right of action is conferred either by the common law or by statute, it is immaterial to consider whether it existed under both, and that it is expressely conferred by statute in this state is readily apparent. The statutes conferring it are the acts of 1909 (Stats. 1909, p. 499), the act of 1911 (Stats. 1911, p. 13), and the Public Utilities Act (Ex. Sess. 1911, p.18). Some of the causes of action sued on here accrued when the statute of 1909 was in force; others while the act of 1911 was in operation, and the remainder while the provision of the Public Utilities Act prevailed. While neither the act of 1909 nor the act of 1911 expressely refers to the constitutional provisions against

discrimination, they were both passed in pursuance of the terms of section 22 of article XII of the constitution relative thereto, and must be deemed to have reference to the provisions of that instrument upon that subject, and both acts declare discrimination by carriers between persons and localities unlawful, and both acts confer a cause of action upon any person damaged by such discrimination.

As to the sections of the act upon the subject, section 34 of the act of 1909 declares:

"It shall also be unjust discrimination for any such transportation company to make or give any undue or unreasonable preference or advantage to any particular person, . . . or locality, or to any particular description of traffic, in any respect whatsoever, or to subject any particular . . . person, or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Sections 22 and 41 of the act of 1911 prohibit discrimination in language similar to that quoted from the act of 1909, and in more extended terms; and as to the right of action for a violation of the prohibitory clause arising from such discriminations, section 38 of the act of 1909 declares that: "In case any transportation company subject to this act, or any person or corporation within the provisions hereof, shall do, cause to be done, or permit to be done, . . . any matter, act or thing in this act prohibited or declared to be unlawful, . . . such transportation company, . . . shall be liable to the penalties hereinbefore provided for; and shall, in addition, be liable to the person or persons, firm or corporation injured by such act or omission for the damages proximately resulting therefrom; . . ."

Section 43 of the act of 1911 declares: "In case any railroad or other transportation company subject to this act shall do, cause to be done, or permit to be done any matter, act, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad or other transportation company shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation."

A charge of more for a short haul than a long one has been decided to be discrimination. It is so held in *Southern Pac.*

*Co.* v. *Superior Court of Kern County,* 27 Cal. App. 240, [150 Pac. 397], where it is said: "It should be kept in mind that section 21 of article XII of the constitution, both before and after the amendment of October 10, 1911, contains a prohibition against discrimination in charges between places, and that the so-called long and short haul clause, following the general provision against discriminations, is a particular application of the rule as first stated in general terms."

In addition to these acts declaring discrimination unlawful and providing for an action in case of such discrimination, a right of action is also given by the Public Utilities Act of 1911, heretofore referred to. Section 73 (a) thereof declares as follows: "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, . . . either by the constitution, or any law of this state, . . . such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom. . . . An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any corporation or person."

It is quite apparent, we think, from these provisions of the two acts, respectively of 1909 and 1911, and the Public Utilities Act of 1911, that a right of action is conferred on any person injured by discrimination through a violation of the long and short haul clause of the constitution and without any regard to whether a right of action existed at common law or not.

4. As we have said, some of the shipments charged were prior to October 10, 1911, and prior to the adoption of the amendments to sections 21 and 22 of the constitution, and the others subsequent thereto. It is insisted by appellant that the rates charged for all shipments prior to October 10, 1911, were established by the railroad commission and that those rates, as they existed when the amendments referred to were adopted, were continued in force and effect by such constitutional provisions. This contention is based upon what is known as the Railroad Commission Act of 1911 and section 22 of article XII of the constitution, above quoted. Sections 17 and 18 of the Railroad Commission Act [Stats. 1911, p. 13] mentioned in the constitutional provision provided: "All rates of charges for the transportation of passengers and freight . . . shall

remain in effect until changed by the commission (section 18).
. . . Until the establishment of such rates and classifications
or the establishment of others in lieu thereof the said railroad
or other transportation company filing such schedules or tariffs
and classifications, and parties thereto, shall charge and collect
the rates and fares in effect at the time of the passage of this
act." (Section 17.)

Now, it is quite apparent that as far as the defense is made
that the rates charged prior to October 10, 1911, had been es-
tablished by the railroad commission, and were therefore valid
and a protection to defendant, it cannot be sustained. While
it is true that during the period from 1879 to the time of
the amendment of October 10, 1911, the railroads were power-
less to fix rates themselves, and the only authority to do so
was vested under the constitution in the railroad commission,
still the latter body could only fix rates which were authorized
by the constitution. Counsel do not pretend to point out where
the commission derived the power or authority to fix rates dis-
criminatory as to a short or long haul. As a matter of fact,
none existed. All the commission was authorized to do was to
fix reasonable rates—legal rates. And as the constitution
absolutely prohibited the charging of rates in contravention
of the long and short haul provision thereof, the acts of the
commission in attempting to do so were clearly void and af-
forded no protection to the carrier. The only theory upon
which the claim of appellant could be sustained would be that
the constitutional provision as it stood prior to October 10,
1911, was void as contravening the commerce clause of the
federal constitution, but, as we have seen that it was not, the
defense of appellant vanished with it.

As to the further claim that the said amendments adopted
on October 10, 1911, continued in effect existing rates as shown
in established tariff lists on file with the commission. This ap-
plies to the charges made by appellant subsequent to October
10, 1911. It will be noted that the amendment to section
21, article XII, provides that on application of the trans-
portation company to the railroad commission the commis-
sion "may, in special cases, after investigation, be authorized
by such commission to charge less for longer than for shorter
distances . . ." On October 26, 1911, an order was made by
the commission on its own initiative requiring railroads or
other transportation companies then charging rates not in

conformity with the long and short haul clause to file with the commission a schedule of such rates, and if it wished to justify such charges to then file also an application to be relieved from the prohibition of the constitutional provision as to long and short haul charges. On November 20, 1911, and on January 16, 1912, other orders were made by the commission of its own volition in favor of railroads and other transportation companies, granting them permission to file with the commission a list of such changes in rates and fares as would occur in the ordinary course of their business, "continuing under the present rate basis or adjustment higher rates or fares at intermediate points, provided a discrimination against intermediate points was not greater than it existed October 10, 1911," but expressly declaring "that the commission does not hereby indicate that it will approve any rates and fares that will be filed under this permission or conceding the reasonableness of any higher rates to intermediate points, all of which rates and fares will be investigated at the hearing to be held January 2, 1912."

Now, it appears from the record in this case that the defendant never filed any application pursuant to said orders, or at all, until December 30, 1911, and February 15, 1912, on which dates it filed applications showing deviations by it from the prohibition of the long and short haul clause and asking for relief from the prohibitory constitutional provision. The record, too, affirmatively shows that no investigation was had on these applications, the same being continued from time to time, the last continuance prior to this action being till April 4, 1912, and it does not appear that any order was finally made approving any rates or fares contained in the schedules filed by the defendant.

The position of the defendant is that these orders continued in effect the charges existing when the amendments to sections 21 and 22 were adopted; that the commission was given power to establish such as the rates under the permission of section 15 of the "Railroad Commission Act" authorizing it to fix rates, which act is referred to in said amendment to section 22 and must be construed in connection with the terms of said section 22, which declares that "No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those con-

ferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution.''

These same points which defendant is making here were made by the defendant in the Southern Pacific case in the circuit court of appeals, which we have heretofore referred to and cited. In disposing of these points it is said in that decision: ''But it does not appear that the defendant filed such an application until December 30, 1911, or that an investigation was ever had by the commission, or that it ever made an order finally approving any of said rates or fares. If, indeed, the orders of the commission may be construed as expressly giving by their terms authority to continue in effect until an investigation of the rates then in existence, which deviated from the constitutional provision as to the long and short haul, it is obvious that the commission erroneously assumed that the act of 1911 gave it the power to make such an order. The amendment of 1911 gives the power to authorize a deviation from the prohibition of the constitution only upon the application of the carrier, and after an investigation by the commission, for it does not, as does the act of Congress giving authority to the Interstate Commerce Commission, authorize the fixing of temporary rates pending investigation. Assuming that under such a temporary order the defendant continued to make charges forbidden by the constitution, it would be necessary for it to show, in defending an action for the recovery of such charges, that the commission finally approved the rates, and made them valid by an order made after an application and investigation as required by the statute.''

And answering the claim as to the power given to the commission under the provisions of section 22 immediately above quoted, the court continues: ''We think it is very clear that an act authorizing the commission to establish rates regardless of the provisions of section 21 of the amended constitution would be inconsistent with that section. While section 22 declares that the legislature may confer upon the commission powers additional to those conferred upon it by the constitution, it erects a barrier which the legislature cannot pass, in providing that such powers must not be inconsistent with the powers conferred upon the commission by the constitution,

The constitution specifically points out the method whereby relief can be had from the prohibition as to the long and short haul, and it is clear that any statute which provides a method for obtaining such relief other than the method therein prescribed is inconsistent with it.''

While this decision of the circuit court is not a final one, we agree with the reasons and conclusions just quoted denying any efficacy in the position taken by defendant. It is apparent that while the authority is given to the legislature to confer similar or different power upon the railroad commission than is directly granted by the constitutional provision, this authority is coupled with the limitation that the power so conferred must not be inconsistent with the constitutional power expressly given. The method or procedure under which the commission may relieve the carrier from the prohibition of the long and short haul is provided in the constitution itself. It can be invoked only through an application filed by the railroad or other transportation company. Relief can only be granted after an investigation, which, of course, means an investigation for the purpose of determining what are reasonable rates and by an order finally made on the application approving the rates which constitute the deviation. Its authority to act and the method of procedure to be pursued being thus expressly prescribed by the constitution, any other method would be inconsistent with the method prescribed and nugatory.

Two other points are made by defendant, first, that as no protest was made against the payment of the freight charges when exacted the payment must be treated as voluntary and no action for their recovery back can be maintained; second, that in order to sustain a claim for discrimination it was necessary for plaintiff to show that when the shipments to intermediate points were made for which the higher rates were charged, there were contemporaneous shipments made to the more distant points. These objections need no extended discussion.

As to the matter of protest. Plaintiff alleged that all plaintiff's assignors, who were the consignees of the shipments, were compelled to pay the charges in order to obtain their consignments, and defendant in its answer admitted that if the payments had not been made the consignees could not have obtained the goods. It would have been an idle waste

of words to have made a payment under protest, and the rule is that money thus paid is not voluntarily paid but may be recovered back without protest. (*Mobile & Montgomery R. R. Co.* v. *Steiner et al.,* 61 Ala. 559; *Chicago & Alton R. R. Co.* v. *Chicago V. & W. Coal Co.,* 79 Ill. 121.)

Nor do we think it material whether, when the shipments to intermediate points complained of as excessively charged for were made, no contemporaneous shipment to the more distant point was made. Under the constitutional provision the legitimate maximum charge for the shorter haul is the charge the carrier makes for the longer one, and it is only necessary to show in proof of an illegal discrimination that the shipper paid a larger sum for the short haul than the defendant would have charged for the longer one. Actual shipment for the longer distance is not required to be shown. All that is required is a showing that the defendant held out and published to the shipping world that it would charge certain rates for the transportation of a certain class of merchandise from San Francisco to Los Angeles. This was shown, and, when shown, for the purpose of determining whether discrimination was practiced or not, the rates so held out to be charged are deemed in law to have been charged.

These are all the points made by defendant, and as we do not find any of them tenable, the judgment is affirmed.

Wilbur, J., Sloss, J., Melvin, J., Shaw, J., and Richards, J., *pro tem.,* concurred.

Rehearing denied.