[Civ. No. 14981.   Second Dist., Div. Three.   July 15, 1946.]

SOUTHERN CALIFORNIA TELEPHONE COMPANY (a Corporation), Respondent, v. W. L. CARPENTER, Appellant.

W. L. Carpenter, in pro. per., for Appellant.

Lawler, Felix & Hall for Respondent.

DESMOND, P. J.—A verdict rendered by a jury under direction by the court awarded to plaintiff the sum of $1,638, principal, and $112.86, interest, as due under a contract en-

tered into between the parties on January 15, 1943. Defendant has claimed an appeal from this judgment, also from the orders of the trial court denying his motions for a new trial, to tax costs, to strike the cost bill and to vacate the judgment. Referring to section 963, Code of Civil Procedure, we find that there is no authority for an appeal from any of the matters mentioned except from the judgment itself. It will be necessary, therefore, to dismiss the purported appeals from the various orders of denial. As to the appeal from the judgment, the appellant, appearing here in propria persona as he appeared also at the trial, has not clearly stated his grounds, but it appears that he takes exception to many rulings of the court in regard to the admission and rejection of certain items of testimony; he also claims that by reason of the court's granting the motion for a directed verdict he was denied his right of trial by jury in violation of the Constitution.

The appellant, for some years, has been engaged in the business of moving service and also storage. As a means of advertising and as a convenience for the public, his patrons and himself, he secured various listings in the Los Angeles Classified Telephone Directory, sometimes called the "Buyer's Guide." These listings, eight in number, appear in the contract which appellant signed, hereinafter set out, and it will be noted that the first three items provide for publication under the same name as the "advertiser," namely "Argonne Van & Storage Company," a title under which appellant did business, and that the balance of the listings incorporate that name. The Los Angeles Telephone Directory, issue of March, 1943, was introduced as Exhibit 6 in this case and, on page 379, appears the two-column ad for "Moving Service," for which a charge of $100 monthly was made under the contract. On page 378 appears a half-inch columnar ad, reading "Hollywood Argonne Van & Storage Company." On page 376, another half-inch columnar ad, reading "Clipper Line Argonne Van Lines," appears. The other ads mentioned in the contract also appear in the directory and in all these ads the same telephone number is listed, namely ADams 1-1121. On page 579 of the directory, under the title "Storage," appears in the lower left hand quarter thereof under the name "Argonne Van & Storage Company," the second item listed in the contract, double one-half column, for which a monthly charge of $55 was fixed.

The contract upon which the action is based reads as follows:

"SOUTHERN CALIFORNIA TELEPHONE COMPANY —ADVERTISING CONTRACT

"Subject to the terms and conditions printed on the reverse hereof and expressly made a part of this contract, the undersigned requests the Southern California Telephone Company at Los Angeles, to insert advertising as indicated below in the March 1943 issue of the Los Angeles Classified Telephone Directory for one issue only, for which we agree to pay $182.00 per month, in advance, on publication of the advertising and a like amount each and every month thereafter as long as the advertising appears in the directory.

"No employee of the Company is authorized to vary any of the terms and conditions of this contract.

H. E. Dryden for Hulme          Argonne Van & Storage Co.
    Salesman                              Advertiser

Date Jan. 15, 1943     Address 806 W. 47th     by W. L. Carpenter
                                                 Title  Owner

| NAME | SPACE | HEADINGS | Mo CHARGE |
| --- | --- | --- | --- |
| Same ADams 1-1121 | 2  Col | Moving Service | 100.00 |
| Same ADams 1-1121 | Dbl | | |
| | ½ Col | Storage-Household | 55.00 |
| Same ADams 1-1121 | ½"Infl | Moving Service | 4.50 |
| Beverly Hills Argonne Van & Storage Co. ADams 1-1121 | ½"Infl | Moving Service | 4.50 |
| Hollywood Argonne Van & Storage Co. ADams 1-1121 | ½"Infl | Moving Service | 4.50 |
| Clipper Line Argonne Van Lines ADams 1-1121 | ½"Infl | Moving Service | 4.50 |
| L.A. Argonne Van & Storage Co. ADams 1-1121 | ½"Infl | Moving Service | 4.50 |
| Wilshire Argonne Van & Storage Co. ADams 1-1121 | ½"Infl | Moving Service | 4.50" |

Among the "Terms And Conditions" listed on the reverse side of the contract, the first item is couched in the following language: "This contract constitutes the entire agreement between the parties and is subject to the approval of the Southern California Telephone Company herein called the

'Company' it being understood that the advertising copy furnished by the advertiser must be acceptable to the Company and that the printing of the advertising herein specified will constitute such acceptance and approval." The last of the "Terms and Conditions" reads as follows: "This contract shall at all times be subject to such changes or modifications by the Railroad Commission of the State of California as said Commission may from time to time direct in the exercise of its jurisdiction."

The initial step in this proceeding was the filing, on September 18, 1943, in the Municipal Court of Los Angeles, of a complaint for services rendered against W. L. Carpenter, individually and doing business as Argonne Van & Storage Company. After a demurrer was sustained, respondent filed an amended and supplemental complaint, to which appellant filed a pleading entitled "Defendant's Answer to Amended and Supplemental Complaint: Counter Claim and Cross-Complaint," seeking a total of $10,000 damages. Although there was no separate cross-complaint filed, respondent treated the pleading as containing a cross-complaint and filed an answer thereto. Since the amount prayed for in the "Counter Claim and Cross-Complaint" exceeded the jurisdiction of a municipal court, the case was transferred to the superior court.

When the matter came on for hearing and before the jury was impaneled, it was stipulated between the parties that respondent might file a "Second Amended and Supplemental Complaint" and that appellant's "Answer . . . Counter Claim and Cross-Complaint" be deemed a responsive pleading.

The second amended and supplemental complaint alleged, in substance, the making of the contract between the parties; that the form thereof and the rates upon which it was based were on file with the Railroad Commission of the State of California and that the advertising was subject to the rates, rules and regulations on file with the commission; that the directory was published on March 1, 1943, and contained the appellant's advertising and listings provided for by the contract; that said issue of the directory was in force for the period of March to November, 1943, inclusive; that respondent performed all the terms of the contract called for, and pursuant thereto was entitled to the sum of $182 per

month for the nine months' period; that no part of that sum, $1,638, had been paid and that it was due with interest thereon.

Appellant's answer denied that respondent operated pursuant to the rules, regulations and other provisions of the Public Utilities Act; denied that the form of the contract pleaded and rates were on file with the Railroad Commission or that the form of the contract or the charges were in accordance with the rates, rules and regulations which the company alleged it had on file with the Railroad Commission; denied that the company had performed all of the terms of the contract to be performed on its part and denied that there was any money due from appellant to respondent. In his first affirmative defense and "for counter claim and cross-complaint" appellant alleged that he was engaged in the business of moving and storing household furniture; that he owned a certificate of public convenience and necessity, issued by the California Railroad Commission, which authorized him to operate as a highway common carrier; that the advertising contract of January 15, 1943, was unlawful and illegal and contrary to the rates, rules and regulations of respondent lawfully on file with the Railroad Commission and in effect at that time; that the respondent "required" appellant to enter into the contract on the form prescribed and furnished by it and at the rates designated by it; that said rates are not just or reasonable nor were they then nor are they now lawful rates approved by the Railroad Commission; that appellant has been and will continue to be injured and to suffer loss of business because of his refusal to pay unlawful rates of the company for advertising space in the classified directory in that respondent refuses to publish and print advertising matter for appellant at the rates which it has lawfully on file with the Railroad Commission and that because appellant refuses to pay respondent more than its published and approved rates respondent refuses to accept or print appellant's advertisements in its classified directory, all to appellant's injury in the amount of $5,000. Appellant's second affirmative defense and "for counter claim and cross-complaint" alleges that respondent is a public utility and has a monopoly and, as such, publishes the only classified telephone directory appearing in the Los Angeles area; that appellant requires advertising space in said directory in order for his customers to locate him; that appellant has offered to pay respondent its lawful rates for advertising space in its classi-

fied directory but it fails and refuses to publish appellant's advertisements at the lawful rates; that in connection with the publishing and printing of advertisements in the "Moving" section of the classified directory respondent prints and publishes advertisements of moving companies which hold out different moving companies to the public as common carriers of household goods and that such advertisements are injurious and a detriment to appellant's business in that they advertise a service for which the advertisers have no license under the Auto Stage and Truck Transportation Act of 1917 as a common carrier, all to appellant's injury and damage in the sum of $5,000.

At the trial respondent proved the material allegations of its second amended and supplemental complaint, introducing Exhibit 4, a certified copy of the classified telephone directory advertising schedule indicating that it had been "filed with and approved by said Railroad Commission" and had been "in effect since December 1, 1940," and revealing that the following charges, among others, were the same as those made in the contract of January 15, 1943, *supra:*

|  |  | Charges Per Month |
|---|---|---|
| "(1) | Display Advertisements | |
| | Two column | $100 |
| | Double ½ Column | 55 |
| | . . . | |
| (2) | Column Advertising: . . . | |
| | ½ Columnar Inch | 4.50 . . ." |

Plaintiff's Exhibit 2, being a copy of the form of respondent's "Advertising Contract," which had been "filed with and approved by said Railroad Commission" and was "in effect from October 24, 1941 to August 29, 1943," likewise revealed that it was the same form of contract as that entered into between the parties. There was no showing of any change or modification by the Railroad Commission in the form of the contract during its term, nor was there evidence of any change in the rules, rates and regulations by which the respondent was governed.

At the conclusion of respondent's case, appellant, in support of his defense, offered to prove that at some time in the past the classified directory was set up in a three-column page; that the company changed it to a four-column page directory, but continued to make the same charges as when the directory contained a three-column page; that an advertisement which

formerly occupied two-thirds of a page in a three-column page directory now occupied only half a page in the four-column directory; that since the size of the columnar space was decreased without any changes or reduction in the rates therefor, this constituted a rate increase which should have been but was not justified by the Railroad Commission after a public hearing; that the present rates as disclosed by Plaintiff's Exhibit 4 "in connection with the present form of the book were not authorized by the Railroad Commission" and that the charges are "unjust and unreasonable and not warranted by the California Railroad Commission"; that appellant has been injured by respondent's demands "to pay the wrong rate" and will continue to be injured and suffered a loss of business by refusal to advertise and to pay a rate which is "unlawful." These offers of proof, objected to by respondent, were properly rejected by the trial court.

Appellant makes some thirty-six alleged assignments of error, and maintains on appeal, as he did during the trial, that "the contract was made on the basis of a *'Two Column Advertisements'* contained in the three-column book and not a four-column book, as, was printed." According to the appellant, the former plan by which a three-column directory was issued by the respondent several years prior to 1940 was abandoned before that year and a four-column directory issued at all times thereafter. There was no evidence before the court regarding any charge for advertising rates in a four-column directory or a three-column directory, as such, but merely schedules of rates charged according to the space provided for in the contract, namely, two column, double one-half column and one-half inch "Infl" (meaning, informational listing). Since all these rates had been approved by the Railroad Commission and applied equally to every advertiser whose name appeared in the directory, it is apparent that there was no discrimination practiced against this appellant and that he suffered no real injury. He obtained just what he bargained for but has endeavored, with an expenditure of time and labor which, to us, seems altogether disproportionate, to escape payment by relying upon legal principles which have no present application and fanciful theories which the court was compelled to reject. An example of the latter was the idea that he could attack in this proceeding rates which had been approved by the Railroad Commission, while section 65 of the Public Utilities Act [Stats. 1915, p. 115, as amended; 2

Deering's Gen. Laws, Act 6386], provides that "In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive." In section 67 of the act, it is stated that ". . . No court of this State (except the Supreme Court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission [etc.]." That the trial judge was fully aware of this situation appears from his comments quoting sections 65 and 67 of the act and stating to appellant, "You are making in effect a collateral attack on the rates and charges fixed by the Commission for advertisements in the classified telephone directory as put out by the plaintiff," and at another point, "But it is not for this Court in this proceeding to determine their rates, I mean to correct their rates or to annul their rates or to enjoin the rates they have fixed."

■ The contention of appellant that the trial judge erred when he granted respondent's motion for a directed verdict and thereby deprived the appellant of his right to a trial by jury, as provided by the Constitution, cannot be sustained. It is stated in *Walters* v. *Bank of America etc. Assn.* (1937), 9 Cal.2d 46, at p. 49 [69 P.2d 839] : "The trial court, in a proper case, may direct a verdict in favor of a party upon whom rests the burden of proof, in this case the plaintiff. Substantially the same rules apply to directed verdicts in favor of plaintiffs as apply to such verdicts in favor of defendants. (*Bias* v. *Reed,* 169 Cal. 33 [145 P. 516] ; 24 Cal.Jur., p. 913, sec. 163.) A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been [were] rendered. (*Estate of Flood,* 217 Cal. 763 [21 P. 2d 579] ; *Parker* v. *James Granger, Inc.,* 4 Cal.2d 668 [52 P.2d 226].) In passing on the propriety of the trial court's action in directing a verdict, the doctrine of scintilla of evidence has been rejected in this state. (*Estate of Baldwin,* 162 Cal. 471 [123 P. 267].) A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. (*Kohn* v. *National Film Corp.,* 60 Cal.App. 112 [212 P. 207] ; 24 Cal.Jur., p. 915, sec. 163.)"

A final contention by appellant is that the interest computed on the judgment is erroneous and cannot be reconciled with the lawful rates of interest in California based on the principal sum claimed due on the second amended complaint. He does not suggest what the proper interest should be nor further enlighten the court as to the basis of his objection. It appears from the reporter's transcript that a motion was made toward the close of plaintiff's case to amend the second amended and supplemental complaint by inserting, as the date from which interest accrued, the 13th day of December, 1943, instead of the date which appeared in the complaint, November 1st, 1943. According to the record, appellant stipulated that that change might be made. However, the clerk's transcript shows that the amending date was interlined as December 15th instead of December 13th as had been agreed upon. From this situation arises a difference of two days in reckoning interest, but since appellant had agreed that the correct date might be shown as December 13th, we are satisfied that he was not aggrieved by the court's allowance of interest accordingly.

The purported appeals from the orders denying motions for a new trial, to tax costs, to strike the cost bill and to vacate the judgment are each and all dismissed. The judgment is affirmed.

Shinn, J., and Wood, J., concurred.