[Civ. No. 26223. First Dist., Div. One. Apr. 14, 1971.]

PRODUCT RESEARCH ASSOCIATES, Plaintiff and Appellant, v. PACIFIC TELEPHONE & TELEGRAPH COMPANY, Defendant and Respondent.

652

**COUNSEL**

Lewis, Rouda & Winchell and Marvin E. Lewis for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Francis N. Marshall, Noble K. Gregory and Chinin Tana for Defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—Plaintiff appeals from a summary judgment in favor of defendant in an action for damages allegedly sustained as a result of defendant's negligent failure to provide adequate telephone service. The gist of the action is that because of the failure to provide such service plaintiff was caused to lose the distributorship of a Japanese product. The sole issue is whether, under the provisions of its tariff schedule, defendant could limit its liability for service failure to the credit allowance therein provided.[1]

Plaintiff contends that the subject schedule provides only for a credit allowance for interrupted service and that it in nowise purports to limit liability for the negligent failure to provide service. It is defendant's position that plaintiff took the subject service on terms established and controlled by tariff rules of the California Public Utilities Commission (hereinafter the "Commission") and that the Commission Schedule No. 36-T, 1st Revised Sheet 56, paragraph 14(A) is a provision limiting its liability for negligent as well as non-negligent service errors and omissions. Accordingly, defendant contends that where the tariff limitation applies the courts cannot award damages in excess of the amount set out in the tariff schedule since to do so would be a direct interference with the exclusive jurisdiction which the Commission has over the service undertaking and performance of public utility companies.

The subject tariff schedule provides as follows:

"14. Interruptions and Failures of Service

"(A) Credit Allowance for Interruption to Service

"Upon request of the subscriber the Company will allow subscribers credit in all cases where telephones are 'out of service,' except when the 'out of service' is due to the fault of the subscriber, for periods of one day or more from the time the fact is reported by the subscriber or detected by the Company, of an amount equal to the total fixed monthly charges for exchange service multiplied by the ratio of the number of days 'out of service' to the number of calendar days in the billing month. [¶] A day 'out of service' will be considered to exist when service is not available for a period of twenty-four consecutive hours. When any 'out of service' period

---

[1]Defendant moved for a summary judgment on the basis that the tariff provisions defined defendant's liability for interruptions and failures of service and the motion was determined on that basis. The motion was not directed to whether any triable factual issues were set forth, but solely to the issue of law presented.

Such a question may appropriately be determined on a motion for summary judgment. (*Wilson* v. *Wilson,* 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725]; *Nelson* v. *United States Fire Ins. Co.,* 259 Cal.App.2d 248, 251 [66 Cal.Rptr. 115].)

continues for a period in excess of an even multiple of twenty-four hours, then the total period upon which to determine the credit allowance will be taken to the next higher even twenty-four hour multiple. [¶] In no case will the credit allowance for any period exceed the total fixed charges for exchange service for that period."

The essential question in this case is whether the courts are limited in the damages they may award an aggrieved party by virtue of the subject schedule. The determination of this question turns upon whether defendant may properly limit its liability for negligence by filing with and seeking the approval of the Commission of a tariff schedule limiting liability and, if it may do so, whether insofar as the instant case is concerned, it has actually done so.

We observe, initially, that the Commission does not have *exclusive* jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities. (*Vila* v. *Tahoe Southside Water Utility,* 233 Cal.App.2d 469, 477 [43 Cal.Rptr. 654].) Thus, under Public Utilities Code section 2106[2] the courts of this state are expressly granted jurisdiction to award both compensatory and (in a proper case) exemplary damages against a public utility for a loss, damage or injury resulting from any unlawful act or omission to perform a required act. (See *Vila* v. *Tahoe Southside Water Utility, supra;* and see *Schultz* v. *Town of Lakeport,* 5 Cal. 2d 377, 383 [54 P.2d 1110, 55 P.2d 485, 108 A.L.R. 1168]; *Thompson* v. *San Francisco Gas etc. Co.,* 18 Cal.App. 30, 34-35 [121 P. 937].) Accordingly, an aggrieved party may prosecute an action in the courts for any loss or injury arising from a failure of a carrier or public utility ". . . to do any act or thing required to be done by the constitution or any law of the state or any order or decision of the commission." (*California Adj. Co.* v. *Atchison etc. Ry. Co.,* 179 Cal. 140, 145 [175 P. 682, 13 A.L.R. 274].)

The jurisdiction of the courts to award damages is not without limitation, however. Thus we note that in cases where the Commission is authorized to establish just and reasonable rates, and to establish rules and regulations governing the same, such rates, rules and regulations become a part of every contract between a public utility and its patrons. (*Pratt* v. *Coast Trucking, Inc.,* 228 Cal.App.2d 139, 149 [39 Cal.Rptr. 332]; *Gardner* v. *Rich Mfg. Co.,* 68 Cal.App.2d 725, 730-731 [158 P.2d 23]; *California Adj. Co.* v. *Atchison etc. Ry. Co., supra,* 179 Cal. 140, 144-145.) In such cases the courts are called upon to determine what rates have been established by the Commission and to apply them to the facts as disclosed by the evidence. (*Gardner* v. *Rich Mfg. Co., supra; Pratt* v. *Coast Trucking, Inc., supra; California Adj. Co.* v. *Atchison etc. Ry. Co., supra.*) In

---

[2]Unless otherwise indicated, all statutory references are to the Public Utilities Code.

applying and enforcing such rates the courts are not fixing rates but are merely employing and carrying out rates already established by the Commission. (*Gardner* v. *Rich Mfg. Co., supra,* at pp. 730-731.)

■ With particular reference to telephone companies, we observe that pursuant to section 489 they are required to file with the Commission a copy of their contract with subscribers for telephone service as well as all rules which "in any manner affect or relate to rates, tolls, rentals, classification, or service." Such contract, when approved by the Commission, becomes part of the utilities filed schedule of rates (*Pacific Gas & Elec. Co.* v. *Universal Elec. & Gas Co.,* 94 Cal.App. 343, 348 [271 P. 377]), and such rule, if reasonable, is binding on the parties to the contract incorporating the rule. (*Cole* v. *Pacific Tel. & Tel. Co.* (1952) 112 Cal.App.2d 416, 417-418 [246 P.2d 686].)

■ The jurisdiction of the courts extends also to determining whether a particular tariff or rule approved by the Commission is one which limits the liability of a public utility and, where such tariff or rule purports to exculpate the utility from liability, to decide whether the exculpatory clause is valid. (*E. B. Ackerman Importing Co.* v. *City of Los Angeles* (1964) 61 Cal.2d 595, 600-601 [39 Cal.Rptr. 726, 394 P.2d 566]; *Southwestern Sugar etc. Co.* v. *River Terminals Corp.,* 360 U.S. 411, 417-420 [3 L.Ed.2d 1334, 1340-1342, 79 S.Ct. 1210].)

■ It is well settled in this state that a party may contract to absolve himself from liability for negligence except where such exculpation is discountenanced by public policy or statutory inhibition. (*Sproul* v. *Cuddy,* 131 Cal.App.2d 85, 95 [280 P.2d 158]; *John E. Branagh & Sons* v. *Witcosky,* 242 Cal.App.2d 835, 839 [51 Cal.Rptr. 844]; *Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 41 [41 Cal.Rptr. 73, 396 P.2d 377]; *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445, 447-448 [6 Cal.Rptr. 284, 353 P.2d 924]; *Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411, 414-415 [340 P.2d 604]; *Price* v. *Shell Oil Co.,* 2 Cal.3d 245, 257-258 [85 Cal.Rptr. 178, 466 P.2d 722]; *Tunkl* v. *Regents of University of California,* 60 Cal.2d 92, 96-101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Barkett* v. *Brucato,* 122 Cal.App.2d 264, 276-278 [264 P.2d 978]; *Loughan* v. *Harger-Halderman,* 184 Cal.App.2d 495, 506 [7 Cal.Rptr. 581]; *Orlando* v. *Berkeley,* 220 Cal.App.2d 224, 228 [33 Cal. Rptr. 860].) In this state by the statutory proscription provided in Civil Code section 1668,[3] one may not exempt himself from responsibility for

---

[3]Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

willful injury to the person or property of another or from violations of law, whether willful or negligent. (*Barkett* v. *Brucato, supra; Loughan* v. *Harger-Halderman, supra; Orlando* v. *Berkeley, supra.*) The proscription of Civil Code section 1668 has been held to include an exculpatory clause which affects the public interest. (*Tunkl* v. *Regents of University of California, supra; Union Const. Co.* v. *Western Union Tel. Co.,* 163 Cal. 298, 312-315 [125 P. 242].)

We perceive that the rationale of *Tunkl* does not necessarily require that *every* exculpatory clause affecting the public interest must be declared invalid. In *Ackerman* a distinction is acknowledged between a clause in a private contract purporting to exculpate one from his own negligence and the provisions of a tariff filed with an administrative body possessing pervasive regulatory authority. (61 Cal.2d at p. 599.) The rationale behind the distinction is that the rate specified in the relevant tariff may have been computed on the understanding that the exculpatory clause is to relieve the regulated utility or carrier of the expense of insuring itself against liability for damage or injury caused by the negligence of the utility or carrier or its employees. (61 Cal.2d at p. 599; *Southwestern Sugar etc. Co.* v. *River Terminals Corp., supra,* 360 U.S. 411, at p. 417 [3 L.Ed.2d 1334, at p. 1340].) Accordingly, it was held in *Ackerman* that in a proper case, based upon the particular circumstances primarily determined by such a regulatory authority, an exculpatory clause of the type herein involved might be justified. In such a case although an exculpatory clause in a tariff is stamped with the indicia which, under the rationale of *Tunkl,* places it within the category of a contract affected with the public interest, the clause is, nevertheless, valid because it does not offend public policy, but, rather, is consistent with such policy. (*E. B. Ackerman Importing Co.* v. *City of Los Angeles, supra,* 61 Cal.2d 595, 599; *Southwestern Sugar etc. Co.* v. *River Terminals Corp., supra,* at pp. 417-418 [3 L.Ed.2d at pp. 1340-1341].)

We observe that there are cases in this state which hold that a public utility may limit its liability for negligence or omission by filing with the Commission a rule limiting such liability, and that the provisions of such rule, if reasonable, are binding on the parties to a contract incorporating the rule so as to limit the public utility's liability as set forth therein. (See *Cole* v. *Pacific Tel. & Tel. Co., supra,* 112 Cal.App.2d 416, 417-418; *Riaboff* v. *Pacific Tel. & Tel. Co.* (1940) 39 Cal.App.2d Supp. 775, 778 [102 P.2d 465].) The *Riaboff* case did not consider whether the limitation of liability was involved as against public policy or proscribed by Civil Code section 1668. In *Cole* it appears that it was there urged that the provision seeking to limit the company's liability for its own negligence was void because contrary to public policy. That contention was dismissed on

the basis that no authority was cited where consideration was given in cases involving tariff regulations on file with the Commission. (112 Cal. App.2d at pp. 419-420.)

In the present case, assuming that the Commission could properly approve a rule limiting liability for negligence, the instant tariff schedule does not purport to be such a rule. ▮ It is well settled, even in cases where one may properly exculpate himself from liability for ordinary negligence, that the party seeking to rely on an exculpatory provision must select words or terms clearly and explicitly expressing that this was the intent of the parties. (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 414-415; *Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, 44; *Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245, 257-258; *Sproul* v. *Cuddy, supra,* 131 Cal.App.2d 85, 95; *John E. Branagh & Sons* v. *Witcosky, supra,* 242 Cal.App.2d 835, 839.)

▮ The language of the subject schedule, which defendant prepared and filed for approval with the Commission in order to make it part of its filed schedule of rates and binding upon those who contracted for telephone service, falls short of expressing defendant's intention to exculpate itself from negligence. Since defendant itself prepared and submitted the schedule it could have plainly stated that it intended to relieve itself from liability for interrupted or failure of service where such interruption or failure resulted from its own negligence. (See *Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 414-415; *Pacific I. Co.* v. *California, etc., Ltd.,* 29 Cal.App.2d 260, 274 [84 P.2d 313].) The subject schedule merely deals with a "credit allowance" against service charges to which a telephone subscriber is apparently entitled whether or not the telephone company was negligent. By its express language the schedule is limited to cases of interruptions and failures of service and not to negligent conduct. (See *Horwitz* v. *Chesapeake & Potomac Telephone Co.* (Dist.Col.App.) 265 A.2d 772, 773; *Tom Lee, Inc.* v. *Pacific Tel. & Tel. Co.,* 154 Ore. 272 [59 P.2d 683].) The obvious purport of the schedule is to provide for a return of any charge paid by the subscriber because no benefit has been conferred upon him and, hence, there has been a failure of consideration. Nowhere in the schedule is it stated or implied that the credit allowance is in lieu of compensatory damages caused by a telephone company's negligence, or that such allowance is the sole remedy which a subscriber is permitted to invoke. Under the principles hereinabove discussed, if defendant intended to give the schedule the effect claimed by it, it should have expressly stated that it was limiting its liability for negligence. It could have plainly stated that it intended to relieve itself from such liability. Since it did not do so, we resolve all doubt, as we should, in favor of plaintiff. (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 415.)

Defendant's reliance on the *Riaboff* and *Cole* cases is misplaced. We have already pointed out that these cases did not purport to consider the question of limitation of liability in the light of the proscription of Civil Code section 1668. In any event, these cases are readily distinguishable in that both involved tariff schedules which expressly purported to limit the utility's liability. In *Riaboff,* the issue involved Regulation No. 14 which read: *"The company is liable for errors or omissions* in the listings of its subscribers in the telephone directory *in an amount not in excess* of the charge for that exchange service during the effective life of the directory in which the error or omission is made." (Italics added; 39 Cal.App.2d Supp. at p. 777.) In *Cole,* the applicable provision reads: " 'In case of error or omission of the advertisement by the company, the extent of the company's *liability shall be limited* to a pro rata abatement of the charge paid to the company as the error or omission may affect the entire advertisement.' " (Italics added; 112 Cal.App.2d at p. 417.)

It is asserted by defendant that we are bound by the interpretation of the Commission that the subject tariff schedule is a limitation of liability for negligence. Our attention has been called to decision No. 77406 in case No. 8593, rendered by the Commission while this appeal was pending, entitled "In the matter of an Investigation on the Commission's own motion into all rates, conditions or tariff provisions limiting liability of telephone corporations."[4] We were requested by defendant to take judicial notice of this decision. This we may do under sections 451, 453 and 459 of the Evidence Code. (*Hickey* v. *Roby,* 273 Cal.App.2d 752, 756 [77 Cal.Rptr. 486].) Moreover, no objection to such request was made by plaintiff and the effect of the subject decision on the instant case was considered and argued at oral argument.

In the subject decision based upon a report of the hearing examiner, whose findings and conclusions the Commission incorporated in its decision, the Commission determined that the rules in respondents' tariffs dealing with the limitation of their liability for errors or omissions do not apply to situations involving willful misconduct, fraudulent conduct or violations of law and the respondent companies[5] were ordered to include in their tariffs and notices to their subscribers concerning said rules the statement that they do not apply to errors or omissions involving willful misconduct, fraudulent conduct or violations of law. The respondents were also ordered to modify their limitation of liability rules to provide that in situations where there are errors and omissions resulting from *gross* negligence a respondent is subject to a liability not to exceed the sum specified,

---

[4]This decision was rendered on June 30, 1970.

[5]Defendant here is one of the respondents in the proceeding resulting in the Commission's decision.

dependent upon the gross annual income of the respondent. The decision, however, approved the right of telephone companies to limit their liability for ordinary negligence and approved rules dealing with the limitation of liability for telephone corporations subject to the order that such rules be uniform. The decision treats the credit allowance provisions of the respondents' rules limiting liability as limitations against liability for negligence and orders that in the future the respondents must modify such provisions to provide that they "may be applied to a greater portion or all of a customer's service for the applicable period rather than be limited solely to the service in which the error or omission was made."

The foregoing decision of the Commission is not binding on this court insofar as it purports to hold that the subject tariff schedule is one exculpating defendant from liability for negligence. The sufficiency and validity of a clause or provision which purports to exculpate one from his own negligence is ultimately one for judicial resolution. (*E. B. Ackerman Importing Co.* v. *City of Los Angeles, supra,* 61 Cal.2d 595, 600; *Southwestern Sugar etc. Co.* v. *River Terminals Corp., supra,* 360 U.S. 411, 420 [3 L.Ed.2d 1334, 1342]; see *Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411, 414-415.) As we have indicated, the courts in a proper case may uphold the validity of a clause approved by the Commission exculpating a telephone company from liability for negligence. Such a clause, if valid, is binding on a subscriber for telephone service to the extent of its provisions. The question whether such a clause is binding in a particular case upon a telephone subscriber who has brought an action for damages against a telephone company, is properly a matter for judicial resolution in the light of the principles hereinabove discussed.

The cases cited by defendant as authority for the proposition that we are bound by the Commission's interpretation are not in point. None involve the question of limitation of liability; rather they deal with the regulation of rates.[6] In the case before us the issue is not the propriety of

---

[6]Defendant has cited three cases: *Pratt* v. *Coast Trucking, Inc., supra,* 228 Cal. App.2d 139; *Harmon* v. *Pacific Tel. & Tel. Co.,* 183 Cal.App.2d 1 [6 Cal.Rptr. 542]; and *Southern Cal. Tel. Co.* v. *Carpenter,* 75 Cal.App.2d 336 [171 P.2d 142]. In *Pratt,* as a result of an investigatory procedure for the purpose of determining whether or not the full rates prescribed by the Commission had been paid to plaintiff, a finding by the Commission that defendant was the alter ego of another company was binding on the superior court. In *Harmon,* the plaintiff brought a declaratory relief action in the superior court to determine whether the defendant telephone company had the right to charge him and other subscribers for "message units" without identifying such calls on demand. It was held that the practice which should be followed in billing for message unit charges is one which is within the Commission's exclusive jurisdiction. The *Southern Cal. Tel. Co.* case holds that in an action by a telephone company for money due on an advertising contract the Commission's determination of rates to be charged in the classified telephone directory was not subject to collateral attack in the superior court.

telephone rates or the power of the Commission to formulate rules governing the conduct of public utilities, but whether a clause in a tariff approved by the Commission is one which exculpates a telephone company from liability for negligence.

The judgment is reversed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied May 12, 1971, and respondent's petition for a hearing by the Supreme Court was denied June 30, 1971. Schauer, J.,* sat in place of Sullivan, J., who deemed himself disqualified. McComb, J., Burke, J., and Schauer, J.,* were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.