[Civ. No. 1467. Second Appellate District.—April 26, 1915.]

## SOUTHERN PACIFIC COMPANY, Petitioner, v. SUPERIOR COURT OF KERN COUNTY et al., Respondents.

COMMON CARRIERS—RECOVERY OF FREIGHT OVERCHARGE FROM RAILROAD CORPORATION—JURISDICTION OF STATE COURTS.—There is nothing in either the constitution or any of the statutes of this state to warrant the conclusion that the courts may not entertain an action for the recovery of moneys paid for freight when the same were collected in violation of law, and the requirement of the Railroad Commission Act of 1911 (Stats. 1911, p. 13), compelling the presentation of applications for relief on account of excessive or discriminatory charges to the railroad commission has not divested the jurisdiction of such courts.

APPLICATION for a Writ of Review originally made in the District Court of Appeal for the Second Appellate District to annul a judgment of the Superior Court of Kern County.

The facts are stated in the opinion of the court.

Henley C. Booth, George D. Squires, and Frank D. Austin, for Petitioner.

E. J. Emmons, for Respondents.

Hoefler, Cook, Harwood & Morris, and Alfred J. Harwood, *Amici Curiae.*

CONREY, P. J.—On the third day of July, 1912, in the justice's court of the sixth judicial township of the county of Kern, the San Joaquin Valley Commercial Association filed a complaint against the petitioner herein, the Southern Pacific Company, a common carrier of persons and freight within the state of California and in the county of Kern. The action was on a claim assigned to the plaintiff by one R. Pile and was for the demanded sum of $12.99. It was alleged that on February 5, 1912, plaintiff's assignor caused to be shipped by defendant as such common carrier certain described packages of freight over the line of the defendant from the city of Oakland to the city of Bakersfield; that the defendant repre-

sented that the freight charge for the transportation of said freight between said last named places was the sum of $28.97 which sum was then and there collected for such transportation and paid; that plaintiff's assignor subsequently discovered that the true freight charge for the transportation was the sum of $15.98, and that defendant had obtained from him the sum of $12.99 over and above the legal charge therefor.

A demurrer to the complaint having been overruled and defendant having answered denying all of the allegations of the complaint, the issues were tried in the justice's court and judgment rendered in favor of the plaintiff for the amount of said demand. Thereafter an appeal to the superior court was duly taken upon all questions of law and of fact.

At the trial in the superior court the case was submitted upon evidence which principally consisted of a transcript (admitted by stipulation) of the evidence given at the trial in the justice's court, together with certain other documents, which documents, or the facts therein shown, are hereinafter mentioned as far as required for this decision.

The rate charged on the shipment in question was sixty-eight cents per hundred pounds. It was shown that between October 1, 1911, and February 15, 1912, covering the date of this transaction, the defendant had on file with the railroad commission of the state of California a fourth-class rate of sixty-eight cents per hundred pounds from Oakland to Bakersfield, and a fourth-class rate of 37½ cents from Oakland, California, to Los Angeles, California. The merchandise in question belonged to the fourth class. Bakersfield is an intermediate point on the main line of defendant's railroad from Oakland to Los Angeles. It was admitted that the rate from Oakland to Los Angeles is a forced rate because of water competition from Oakland to Los Angeles.

Judgment was entered in the superior court against the defendant, which now by its application for a writ of review seeks to obtain an order declaring said judgment to be null and void, as in excess of the jurisdiction of the court. Although the amount involved is very small, we are informed that many hundreds of similar cases are pending, and this case has been presented elaborately, both by briefs and oral argument.

Some of the objections urged by petitioner seem to be in the nature of contentions that the plaintiff in the court below

did not, on the evidence, show that it had any cause of action against the defendant railroad company. Passing over these propositions, we will direct our attention to the claim of petitioner that exclusive jurisdiction to determine the validity of the demand and to determine the amount allowable thereon, is vested in the railroad commission of the state, and that the courts have no jurisdiction over such a controversy, except when the action is based upon an award made by the railroad commission.

By the constitution of 1879 it was provided that "no discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state, or coming from or going to any other state. Persons and property transported over any railroad, or by any other transportation company or individual, shall be delivered at any station, landing, or port, *at charges not exceeding the charges for the transportation of persons and property of the same class, in the same direction, to any more distant station, port, or landing. . . ."* (Const., art. XII, sec. 21.) It was further provided with reference to the railroad commission: "Said commissioners shall have the power, and it shall be their duty, to establish rates of charges for the transportation of passengers and freight by railroad or other transportation companies, and publish the same from time to time, with such changes as they may make; . . . In all controversies, civil and criminal, the rates of fares and freights established by said commission shall be deemed conclusively just and reasonable, and in any action against such corporation or company for damages sustained by charging excessive rates, the plaintiff, in addition to the actual damage, may in the discretion of the judge or jury, recover exemplary damages. . . . Nothing in this section shall prevent individuals from maintaining actions against any of such companies. . . ." Penalties by fine against the companies and by fine or imprisonment against their officers, agents, or employees, were provided for in the same section last above quoted. (Const., art. XII, sec. 22.)

Operating under these terms of the constitution during the years from 1879 to 1911, transportation rates in California were made by orders of the railroad commission. Referring

to the record in the present case, we find (as shown by the findings of fact made by the superior court) that the fourth-class rate of sixty-eight cents per hundred pounds from Oakland to Bakersfield was the rate fixed by tariff No. 37 of the defendant company, filed with the railroad commission prior to October 10, 1911, and that the fourth-class rate of 37½ cents per hundred pounds from Oakland to Los Angeles was the rate fixed by the same tariff, No. 37.   The evidence shows that tariff No. 37 was the tariff which became effective on June 27, 1907, and was amended in October, 1909.   No order of the railroad commission changing these rates was made until May 21, 1912, when the commission, acting under proceedings instituted after the constitutional amendments of October 10, 1911, made an order permitting the defendant company to file its tariff No. 711, which became effective on May 27, 1912.

At a special election held in October, 1911, several changes were made in these sections of article XII of the constitution which relate to the railroad commission and to the rights and liabilities of transportation companies.   A part of section 21, as amended, says: "No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places or persons, or in the facilities for the transportation of the same classes of freight or passengers within this state.   It shall be unlawful for any railroad or other transportation company to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates.   Provided, however, that upon application to the railroad commission provided for in this constitution such company may, in special cases, after investigation, be authorized by such commission to charge less for longer than for shorter distances for the transportation of persons or property and the railroad commission may from time to time prescribe the extent to which such company may be relieved from the prohibition to charge less for the longer than for the shorter haul. . . . Nothing herein contained shall be construed to prevent the railroad commission from ordering and compelling any rail-

road or other transportation company to make reparation to any shipper on account of the rates charged to said shipper being excessive or discriminatory, provided no discrimination will result from such reparation." A part of section 22, as amended, says: " . . . Said commission shall have the power to establish rates of charges for the transportation of passengers and freight by railroads and other transportation companies, and no railroad or other transportation company shall charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or freight, or for any service in connection therewith, between the points named in any tariff of rates, established by said commission, than the rates, fares and charges which are specified in such tariff. . . . No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution. The provisions of this section shall not be construed to repeal in whole or in part any existing law not inconsistent herewith, and the 'Railroad Commission Act' of this state approved February 10, 1911, shall be construed with reference to this constitutional provision and any other constitutional provision becoming operative concurrently herewith. And the said act shall have the same force and effect as if the same had been passed after the adoption of this provision of the constitution and of all other provisions adopted concurrently herewith, except that the three commissioners referred to in said act shall be held and construed to be the five commissioners provided for herein."

The Railroad Commission Act of February 10, 1911, above mentioned (commonly known as the Eshleman Act), is found in Statutes of 1911, page 13, et seq. It was amended as to sections 15 and 37 thereof by act approved April 6, 1911. (Stats. 1911, p. 701.) This act, as thus amended, is the act continued in force by the specific provision of the constitution as last above quoted. It remained in force until its place was taken by the present Public Utilities Act, which became effective March 23, 1912. (Stats. (Ex. Sess.) 1911, p. 18.)

The claim on which the plaintiff's cause of action is based in the case here under review arose out of a shipment made and freight charge paid on February 5, 1912. Said action was commenced in the justice's court on July 3, 1912. It follows that the substantive rights of the parties to the action would depend upon the provisions of the constitution and of the Eshleman Act, and that any questions of procedure in the action, or as to the forum in which the rights claimed must be determined, will depend upon the provisions of the constitution, taken together with the provisions of the Public Utilities Act in force at the time of commencement of the action.

To ascertain in what court or other body exercising judicial functions a right may be settled or a remedy enforced, it is necessary to consider the nature of the demand in question, together with the limits of jurisdiction of the several judicial tribunals. Counsel for respondents herein claims that plaintiff's action was one for money had and received by the defendant which in equity and good conscience belongs to the plaintiff. He said: "It is upon an unreasonable amount of money obtained from us by means of an unlawful charge, not an excessive charge." The plaintiff did not base its action upon allegation or proof that the rate of sixty-eight cents from Oakland to Bakersfield was in itself an unreasonable rate, or excessive in the sense of being more than a carrier might reasonably charge if it had the right to fix its own rates without direct governmental supervision. The claim thus made, that the amount charged was unreasonable by reason of being unlawful, is nothing more than a claim that the charge, whether in itself reasonable or not, was unlawful and therefore that it may be recovered back by the plaintiff. Moreover, it is not claimed that the collection of the sixty-eight-cent rate was unlawful as to all of the amount collected; but only that it was unlawful as to that portion thereof over and above $37\frac{1}{2}$ cents per hundred pounds. Assuming, then, for the purposes of our inquiry into the subject of jurisdiction, the undoubted fact that the plaintiff is entitled in some forum to an adjudication of its alleged right to recover the sum demanded, the question presented is whether the remedy can be enforced in a court of law without first obtaining from the railroad commission an order establishing the validity of the demand and the amount thereof.

The following are some of the provisions of the Public Utilities Act, which have been quoted and discussed in the argument:

Sec. 71.   (a) "When complaint has been made to the commission concerning any rate, fare, toll, rental or charge for any product or commodity furnished or service performed by any public utility, and the commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount for such product, commodity or service, the commission may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection; provided, no discrimination will result from such reparation."

Sec. 71.ᵇ   (b) "If the public utility does not comply with the order for the payment of reparation within the time specified in such order, suit may be instituted in any court of competent jurisdiction to recover the same.   All complaints concerning excessive or discriminatory charges shall be filed with the commission within two years from the time the cause of action accrues, and the petition for the enforcement of the order shall be filed in the court within one year from the date of the order of the commission.   The remedy in this section provided shall be cumulative and in addition to any other remedy or remedies in this act provided in case of failure of a public utility to obey an order or decision of the commission."

Sec. 73.   (a) "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by the constitution, any law of this state or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was willful, the court may in addition to the actual damages award damages for the sake of example and by way of punishment.   An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any corporation or person."

Sec. 73.   (b) "No recovery as in this section provided shall in any manner affect a recovery by the state of the pen-

alties in this act provided or the exercise by the commission of its power to punish for contempt.''

Sec. 74.   (a)  ''This act shall not have the effect to release or waive any right of action by the state, the commission, or any person or corporation for any right, penalty or forfeiture which may have arisen or accrued or may hereafter arise or accrue under any law of this state.''

Sec. 83.   (b)  ''No cause of action arising under the provisions of chapters 20 or 386 of the Laws of 1911 shall abate by reason of the passage of this act, whether a suit or action has been instituted thereon at the time of the taking effect of this act or not, but actions may be brought upon such causes in the same manner, under the same terms and conditions, and with the same effect as though said chapters had not been repealed.''

Sec. 83.   (c)  ''All orders, decisions, rules or regulations heretofore made, issued or promulgated by the commission shall continue in force and have the same effect as though they had been lawfully made, issued or promulgated under the provisions of this act.''

Sec. 83.   (d)  ''This act, in so far as it embraces the same subject-matter, shall be construed as a continuation of chapter 20 of the Laws of 1911, approved February 10, 1911, and chapter 386 of the Laws of 1911, approved April 6, 1911.'' (The chapters referred to in this section constitute the so-called Eshleman Act.)

It should be kept in mind that section 21 of article XII of the constitution, both before and after the amendment of October 10, 1911, contains a prohibition against discrimination in charges, between places, and that the so-called long-and-short-haul clause, following the general provision against discrimination, is a particular application of the rule as first stated in general terms.   The Eshleman Act contains various provisions which outline a plan different from that theretofore in force for the establishment of rates.   It also gives a definition more detailed than that of the constitution as to what constitutes discrimination.   Section 22 of the Eshleman Act, among other things, declares that it shall be discrimination to collect or receive a greater, less or different rate, charge, or compensation than the rate, charge or compensation established as in this act provided.   Violations of these rules are declared to be misdemeanors, for which penalties are pro-

vided.   Section 18 of this act says: "All rates of charges for the transportation of passengers and freight and all classifications established by the commission shall remain in effect until changed by the commission. . . . "   Section 28 of the same act provides, among other things, that any person may complain of anything done or omitted to be done by any railroad or other transportation company, or of any act or practice by the railroad or other transportation company, by filing with the commission a complaint, setting forth the cause or causes of such complaint in concise language.   Provisions are made for a notice and hearing on such complaint.   It is further provided that, "if the commission shall find that there has been a violation of any rule, regulation, order or decision of the commission, it shall determine if the same was willful. If it shall find that such violation was not willful it may call upon said company to pay and satisfy the damage done to the complainant by such violation, if any such damage should appear, stating the amount of such damage, . . . if said company shall not pay said damage . . . it shall thereupon impose a fine not exceeding one thousand dollars and shall thereupon take such further action as may be necessary to enforce its order and collect such fine. . . . All damage awarded by the commission under the provisions of this section may be collected by action therefor instituted by the person to whom such damage has been awarded, if such damage remains unpaid after the time fixed by the commission for payment thereof.   Actions or proceedings by any party to collect any award of damages shall be instituted in the proper court in the county, or city and county, in which the violation complained of occurred or in which the plaintiff resides or in which .the principal place of business of the defendant is situated.   On the trial of such suit the findings or order of the commission shall be *prima facie* evidence of the facts therein stated. . . . *The provisions of this section shall not be deemed to abridge or affect the right of any person,* firm, company or corporation *to institute in any court any character of action against any railroad or other transportation company* for any wrong or damage suffered by such person, company, firm or corporation, by reason of any cause whatever, or *for any remedy* or penalty *that may be due him, or to which he may be entitled under* this act or *any law whatsoever.*"   Section 32 is as follows: "If any railroad or

other transportation company doing business in this state shall fail or refuse to perform any duty enjoined upon it by this act or by the constitution of this state, for which a penalty has not been provided by law, or shall fail, neglect or refuse to obey any requirement, order, judgment or decree made by the commission, for every such failure, neglect or refusal it shall pay to the state of California a penalty of not less than $500 nor more than $2000.'' According to section 41 of the same act it was unlawful for any person or corporation to offer, grant, or give any rebate, concession or discrimination in respect to the transportation of any property in this state whereby any such property would be transported at a less rate than that established by the commission, ''or whereby any other advantage is given or discrimination is practiced.'' Section 43 of the same act provided that ''in case any railroad or other transportation company subject to this act shall do, cause to be done, or permit to be done any matter, act, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad or other transportation company shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation; and in case such railroad or other transportation company shall be guilty of discrimination as by this act defined, then, in addition to such damages, such railroad or other transportation company shall be liable to the person, firm or corporation injured thereby in punitive damages in the sum of not less than one hundred dollars, nor more than five thousand dollars, to be recovered in any court of competent jurisdiction in any county into or through which such railroad or other transportation company may run or operate; provided, that any such recovery as herein provided shall in no manner affect a recovery by the state of a penalty provided for such violation.'' Section 44. ''*This act shall not have the effect to release or waive any right of action by* the state or *any person for any right,* penalty or forfeiture *which may have arisen, or may hereafter arise, under any law of this* state; . . . ''

Respondents' position in the argument is that the case under review is not one of reparation for an excessive charge, wherein it would be necessary for a plaintiff to make its application in the first place to the railroad commission; but that

it is a case wherein the plaintiff had no right to go to the railroad commission, and, therefore, ''had nothing to do but bring a suit in the local courts,'' basing its demand upon the principles of the common law. This proposition brings us to a consideration of the difference between the ''reparation'' contemplated by the constitutional and statutory regulations to which we have referred, and those rights of action derived from the common law for the recovery of damages from common carriers on account of wrongful exactions in making unreasonable charges for their services.

The provisions of the constitution as amended and the statutes to which we have referred have attempted to cover the entire subject, including both causes of action which have been long established in the law and the new mode of relief described as reparation. The provisions of the Eshleman Act which continue in force the rights of action in all courts of competent jurisdiction for wrong or damage suffered by a shipper at the hands of a common carrier, must be interpreted in the light of those additional and new provisions which are intended to furnish persons doing business with transportation companies, and to the public as represented by the railroad commission, a direct means of enforcing the rule against discrimination between places and persons. As to claims arising from violations of this rule, these provisions clearly intend that there shall be a uniform compliance with all rates established or sanctioned by the state. To the end that such uniformity may be secured, the right of action to recover amounts charged which are discriminatory or which are in excess of a reasonable charge, has been conditioned upon approval by the railroad commission of any such demand before judgment can be taken thereon in the ordinary courts of law. It is for this reason that section 21 of article XII of the constitution has been amended to say that ''nothing herein contained shall be construed to prevent the railroad commission from ordering and compelling any railroad or other transportation company to make reparation to any shipper on account of the rates charged to said shipper being excessive or discriminatory, provided no discrimination will result from such reparation.'' It was for the same reason that section 28 of the Eshleman Act was written in the terms which we have quoted, providing for orders to be made by the railroad commission requiring satisfaction for damage

suffered by violations of its orders, and providing also for subsequent recovery by action instituted in a court, of sums thus awarded. And it is for the same reason that section 71 of the Public Utilities Act requires that the railroad commission, upon complaint made, shall order reparation to be made for excessive or discriminatory charges, and that upon failure to comply with such orders the party complaining may have his action in any court of competent jurisdiction to recover the amount of the award.

It is manifest, from a reading of the sections hereinabove quoted, that notwithstanding the requirement compelling the presentation to the railroad commission of applications for relief on account of excessive or discriminatory charges, yet that there remains to the courts of law a residuum of their original jurisdiction to enforce recovery of moneys due for freights or fares illegally exacted. The questions here presented require a determination of the lines of this disputed jurisdiction. No twilight zone of uncertainty should be permitted here.

Questions of similar import arising under the Interstate Commerce Act have been decided in the courts of the United States. For instance, it is provided in section 22 of that act [U. S. Comp. Stats. 1913, sec. 8595, 3 Fed. Stats. Ann. p. 851] : that: ''nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.'' In *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, [9 Ann. Cas. 1075, 51 L. Ed. 553, 27 Sup. Ct. Rep. 350], the supreme court of the United States, referring to the foregoing sentence in said section 22, said : ''This clause, however, cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act.'' That case was one where the court had under review the decision of a state court in a

suit to obtain relief from an alleged unreasonable interstate rate exacted by a common carrier from a shipper. The rate was the one fixed in rate sheets which had been regularly established as required by the Interstate Commerce Act; but facts were alleged tending to show that the charge was in excess of a reasonable charge for the service rendered. The case presented, as the supreme court said, "the fundamental question, which is the scope and effect of the act to regulate commerce upon the right of a shipper to maintain an action at law against a common carrier to recover damages because of the exaction of an alleged unreasonable rate, although the rate collected and complained of was the rate stated in the schedule filed with the Interstate Commerce Commission and published according to the requirements of the act to regulate commerce, and which it was the duty of the carrier under the law to enforce as against shippers." The court then outlined the general scope of the Interstate Commerce Act as to the rights, wrongs, and remedies with which it is concerned. The conclusions reached were that the case there presented was one wherein reparation must be obtained through the Interstate Commerce Commission, for the reason that, "unless the requirement of a uniform standard of rates be complied with, it would result that violations of the statute as to preferences and discrimination would inevitably follow"; and it was held that the independent right of action in the common-law courts did not exist in such a case, because "the recognition of such a right is wholly inconsistent with the administrative power conferred upon the commission, and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed."

This same opinion was expressed again by that court in *Robinson* v. *Baltimore & Ohio R. Co.*, 222 U. S. 506, [56 L. Ed. 288, 32 Sup. Ct. Rep. 114]. There also the charge made by the carrier was one prescribed in a schedule published and filed conformably to the act to regulate interstate commerce; and it was claimed that certain sums should be recovered because the charge thus made in excess of a certain other charge was discriminatory. Referring to a distinction attempted to be drawn between the case then before the court and the earlier case of *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, [9 Ann. Cas. 1075, 51 L. Ed.

553, 27 Sup. Ct. Rep. 350], the court said: "It is true, as was urged in argument, that in that case the complaint against the established rate was that it was unreasonable, while here the complaint is that the rate was unjustly discriminatory. But the distinction is not material. The power of the commission over the two complaints is the same—one is as likely to become the subject of diverging opinons and conflicting decisions as is the other; and if a court, acting originally upon either, were to sustain it and award reparation, the confusing anomaly would be presented of a rate being adjudged to be violative of the prescribed standards, and yet continuing to be the legal rate, obligatory upon both carrier and shipper."

In contrast with the two cases cited above, yet in entire harmony with them as to the law, is *Pennsylvania Railroad Co.* v. *International Coal Mining Co.,* 230 U. S. 184, [Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893], where the jurisdiction of the case in the circuit court of the United States was sustained without any proceedings had before the interstate commerce commission. The cause of action was founded upon an allowance of rebates by the carrier to shippers other than the plaintiff where the plaintiff at the same time had paid the lawful tariff charges for like services and had received no rebate on account of those shipments made by it. It was argued by the plaintiff in error that the case presented a rate-making question which must be submitted to the commission, and so was beyond the jurisdiction of the court. But the supreme court said: "Under the statute there are many acts of the carrier which are lawful or unlawful according as they are reasonable or unreasonable, just or unjust. The determination of such issues involves a comparison of rate with service, and calls for an exercise of the discretion of the administrative and rate-regulating body. *For the reasonableness of rates, and the permissible discrimination based upon difference in conditions, are not matters of law. So far as the determination depends upon facts, no jurisdiction to pass upon the administrative questions involved has been conferred upon the courts.* That power has been vested in a single body, so as to secure uniformity and to prevent the varying and sometimes conflicting results that would flow from the different views of the same facts that might be taken by different tribunals. None of these considerations, however, operates to defeat the courts' jurisdiction in the present

case. For even if a difference in rates could be made between free and contract coal, none was made in the only way in which it could have been lawfully done. The published tariffs made no distinction between contract coal and free coal, but named one rate for all alike. That being true, only that single rate could be charged. When collected, it was unlawful, under any pretense or for any cause, however equitable or liberal, to pay a part back to one shipper or to every shipper.''

That the interpretation which has been placed upon the Interstate Commerce Act by the highest court of the land should be followed by this court when like questions arise out of state laws, results not because of any compelling authority, since for the most part these are questions for local determination. But it is evident that the system of regulation of freights and fares provided in the constitution and statutes of California to which we have referred, has been modeled upon the federal act for the regulation of commerce between the states. This being so, it will be assumed that the people of California in enacting the same or similar terms of their written law intended to express the same meaning as that established as the true meaning of the law from which these laws of the state have been derived. In the case at bar, we have a situation analogous to that in *Pennsylvania R. Co.* v. *International C. M. Co.,* 230 U. S. 184, [Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893]. The cause of action of the San Joaquin Valley Commercial Association, plaintiff in the court below, was based upon a charge which the plaintiff claims was illegal ''under any pretense or for any cause.'' If the alleged illegality had been included in a charge made in following an unreasonable or discriminatory schedule of tariffs, the case would be primarily within the exclusive jurisdiction of the railroad commission, because that body could regulate and change the tariff itself and could award suitable reparation to be made for any wrong that had been done. But the plaintiff's claim in this action was that the constitution of the state of California prohibited the defendant from collecting a higher freight charge on transportation of goods from Oakland to Bakersfield than the established rate for a like kind of goods shipped from Oakland to Los Angeles. The jurisdiction of the superior court of Kern County was not dependent upon the soundness or unsoundness of plaintiff's contention as to the true meaning of the constitution. Its

jurisdiction depended upon the actual nature of the demand. The record here shows that the demand actually was founded upon the claim that the plaintiff's assignor had been compelled to pay a charge which was illegal in that it was in violation of the ''long-and-short-haul'' clause of the state constitution. If the charge was thus in conflict with the constitution, it was a charge beyond the jurisdiction of the railroad commission, because it was a charge that the railroad commission could not legalize after it was made and paid, however just the amount might seem to be—conceding that it could legalize any subsequent charges. The jurisdiction to pass upon an alleged illegal charge of this kind is necessarily vested in the courts, because the law has provided no other source of relief. The fact that after October 10, 1911, the petitioner had applied to the commission for permission to continue business under the old schedule pending determination of their petition to be relieved from the long-and-short-haul clause of the constitution as to the rates in question (which application was not passed upon until after February 5, 1912), does not, in our opinion, affect the question of jurisdiction with respect to the demand made in the case now under review. We are not concerned with the error or absence of error that may inhere in the judgment that is under review, for that judgment is not subject to appeal. Our sole concern is to ascertain and to determine whether the subject-matter of the case was within the jurisdiction of the court which rendered the judgment. In view of the several provisions of the written law to which we have referred and some of which are fully set forth herein, and in the light of the decisions to which reference has been made, we are of the opinion that the superior court had jurisdiction to hear and determine the case presented to it and to render the judgment.

The judgment of the superior court is affirmed.

James J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1915, and the following opinion then rendered thereon:

ANGELLOTTI, C. J.—Application for hearing in this court after decision by the district court of appeal of the second appellate district.

The application for a hearing in this court must be denied. Under principles of law well settled in this state, it cannot be held that either the justice's court in Kern County or the superior court of that county exceeded its "jurisdiction" in entertaining and determining the claim of plaintiff in the action of the San Joaquin Valley Commercial Association against the Southern Pacific Company. There is nothing in either the constitution or any of the statutes of this state to warrant the conclusion that the courts may not entertain an action for the recovery of moneys paid for freight when the same were collected in violation of law. The subject-matter of such an action is within the jurisdiction of the courts. Whether the complaint filed in such an action sufficiently states a cause of action or whether the court in any way errs in the determination of other questions, arising in such an action, are matters that in no way go to the jurisdiction of the court. It would seem to be immaterial in this proceeding, whether or not it is essential to the cause of action in the courts that prior proceedings should have been had before the railroad commission. If such prior proceedings are essential, the failure of the plaintiff to show such action simply goes to the making of a sufficient cause of action, a matter not reviewable in *certiorari.*

Our denial of the application for a hearing in this court is not to be taken as an approval of the views of the district court of appeal as to the necessity of such action in any case. We say this much, not with the purpose of expressing any disagreement with those views, because we have not deemed it advisable to consider the same on this application, and prefer to leave that matter to be decided in some case where it is directly involved, rather than to grant a hearing in this court of a case correctly decided by a district court of appeal, for the mere purpose of considering matters not properly cognizable in such a proceeding as this.

Shaw, J., Sloss, J., Lorigan, J., and Lawlor, J., concurred.