[S. F. No. 19495. In Bank. Sept. 27, 1957.]

CALIFORNIA PORTLAND CEMENT COMPANY (a Corporation), Petitioner, v. PUBLIC UTILITIES COMMISSION, Respondent; UNION PACIFIC RAILROAD COMPANY, Real Party in Interest.

Wallace K. Downey for Petitioner.

Everett C. McKeage and Mary Moran Pajalich for Respondent.

E. E. Bennett, Edward C. Renwick, Malcolm Davis and Jack W. Crumley for Real Party in Interest.

GIBSON, C. J.—California Portland Cement Company seeks by this proceeding to obtain the annulment of orders of the Public Utilities Commission.

Portland maintains a mill for the production of cement at Colton and an iron ore mine at Basin, and it ships iron ore from Basin to Colton over a line of the Union Pacific Railroad Company. A steel mill at Kaiser (about 11 miles west of Colton) uses iron ore shipped from Dunn (about 9½ miles west of Basin) over the same line of Union Pacific either to Colton and thence over a line of Southern Pacific Company to Kaiser, or to San Bernardino (near Colton) and from there over a line of Atchison, Topeka and Santa Fe Railway Company to Kaiser. Colton is about 132 miles from Basin by rail, and the distance from Dunn to Kaiser is 133.5 miles via Colton and 130 miles via San Bernardino. Union Pacific's rate on iron ore from Basin to Colton is $1.9824 per long ton, with a minimum of 100,000 pounds per car and 1,000 long tons per shipment, whereas the joint rate on iron ore from Dunn to Kaiser, with the same carload and shipment minimums, is $1.736 per long ton.

Portland filed with the commission a complaint which alleges that the rate from Basin to Colton is discriminatory and that it subjects Colton and Portland to undue prejudice and grants to Kaiser and to receivers of freight at Kaiser an undue preference. Portland asks for elimination of the discrimination and for reparation in the amount of the sums paid in excess of the rate charged from Dunn to Kaiser.

After a hearing, the complaint was dismissed by the commission which found and concluded that Portland had suffered no undue prejudice because there was no competition between Portland and the steel company at Kaiser and, further, that the rates had not been shown to be unduly discriminatory because, although the operating circumstances on the two routes were otherwise substantially similar, the differential was justified by the greater anticipated volume and regularity of the shipments to Kaiser compared with those to Colton.

Upon Portland's application for a rehearing the commission affirmed its prior order of dismissal and denied a rehearing solely on the basis of the finding that since there was no competition between Portland and the steel company the maintenance of a lower rate to Kaiser than to Colton did not result in undue prejudice or discrimination to Portland or undue preference to the steel company. The opinion of the commission concluded: "However, upon reconsideration of the facts, the commission is of the opinion that they present a situation which should not be allowed to continue. Therefore, the defendant is directed within sixty days from the date hereof to review the rates involved, looking toward the filing of rates which will not reflect an unreasonable difference between the rates from Dunn to Kaiser as compared with those from Basin to Colton. The Commission staff is directed, within sixty days after the effective date hereof, to notify the Commission as to what action, if any, has been taken by defendant, to the end that the commission may take such steps as it may be advised."

The statements of the commission, in denying a rehearing, that the facts "present a situation which should not be allowed to continue" and that the rates should be reviewed by Union Pacific so as to obtain "rates which will not reflect an unreasonable difference" in charges between the respective localities, necessarily imply that there was an unreasonable difference between the existing rates. Such statements, having been made in the opinion denying a rehearing in an adversary proceeding "after reconsideration of the facts," obviously constituted findings of fact.

The term "unreasonable difference" as used in the commission's order is identical with language in section 453 of the Public Utilities Code which provides, in part, "No public utility shall establish or maintain any unreasonable difference as to rates . . . as between localities. . . ." Section 21 of article XII of the California Constitution reads, in part, "No

discrimination in charges . . . shall be made by any railroad . . . between places or persons . . . ." The unreasonable difference as to rates found by the commission and prohibited by section 453 is necessarily "discrimination" (i.e., an undue difference in treatment) prohibited by section 21 of article XII of the Constitution.

The implied finding of the commission, which is thus clearly to the effect that the rates violated both section 453 of the Public Utilities Code and section 21 of article XII of the Constitution, is supported by the evidence. The mileage and the operating conditions from Basin to Colton and from Dunn to Kaiser were substantially the same, except that there was a difference in anticipated volume and regularity of shipments. The weighing of whatever factors may have tended to show that the differential was reasonable as against the approximate equality of distances and conditions of transportation was a matter within the exclusive jurisdiction of the commission. (Cal. Const., art. XII, § 22; Pub. Util. Code, § 1757; cf. *Southern Pac. Co.* v. *Public Utilities Com.*, 41 Cal. 2d 354, 359-362, 367 [260 P.2d 7].)

There is obviously an inconsistency between the implied finding that the difference in rates is unreasonable and the finding that the differential was not unduly discriminatory. In the original order of the commission the finding that there was no undue discrimination was rested in part upon a finding that the differential was justified by differences in anticipated volume and regularity of shipments, but this justification was omitted by the commission from its second order. The only other ground given by the commission for its finding that there was no undue discrimination consisted of the statement, made in both orders, that there could be no undue discrimination where there was lack of competition. This statement, however, amounts to an erroneous conclusion of law because it is contrary to section 453 of the Public Utilities Code, which prohibits unreasonable differences in rates as between localities and makes no exception for situations in which no competition is involved. Any unreasonable difference is thus prohibited by section 453 and necessarily constitutes undue discrimination.

We are, of course, concerned here with the statutory and constitutional prohibitions against any "unreasonable difference" or "discrimination" with respect to localities and places, and we are not confronted with the determination of the proper construction to be given to the language in section

453 of the code which prohibits a utility from granting any "preference or advantage" to any corporation or person and from subjecting any corporation or person to any "prejudice or disadvantage." Whether or not the language relating to corporations and persons may be construed as referring to competitive relations, clearly such is not the case with the language pertaining to localities. Similarly, federal decisions under the Interstate Commerce Act* which require a competitive relation as a basis for finding undue "preference or advantage" or undue "prejudice or disadvantage" are inapplicable here.

█ Findings of fact of the commission, including those of reasonableness and discrimination, are as a general rule final and not subject to review. (Pub. Util. Code, § 1757.) Here, however, the commission, as we have seen, has made inconsistent findings with respect to the principal issue involved and, in placing its finding that the differential was not unduly discriminatory upon the ground that there was no competition between Portland and the steel company, has followed an erroneous view of the law. The orders based on these findings must therefore be annulled.

█ The commission contends in effect that it is not bound by law to determine in this adversary proceeding the amount of a possible discrimination and to order its removal, but that it may proceed with the matter in an administrative investigation without participation by Portland as a litigant. Portland, however, has a right to file a complaint with respect to such matters, and the commission is required to hold a hearing, make an order which resolves the issues presented to it and fix the rates which it determines to be reasonable and just. (Pub. Util. Code, §§ 1702, 1705, 728.) In our opinion the statutory provisions, considered as a whole, give Portland the right to participate in the entire proceedings.

Section 734 of the Public Utilities Code provides that the commission may order a public utility to make "due reparation" to a complainant when the commission, after investigation, has found that the utility has charged an "unreasonable,

*Section 3, paragraph (1) of the Interstate Commerce Act (49 U.S. C.A., ch. 1) reads, insofar as here relevant: "Undue preference or prejudice prohibited. It shall be unlawful for any common carrier subject to the provisions of this chapter to make or give any undue or unreasonable preference or advantage to any particular person . . . or locality . . . in any respect whatsoever, or to subject any particular person . . . or locality . . . to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

excessive, or discriminatory'' rate. Unreasonable or excessive rates are not involved here because Portland concedes that neither of the rates charged is in itself excessive or unreasonable and that both are within the zone of reasonableness within which a carrier may generally establish its own freight rates. (*Cf. Southern Pac. Co.* v. *Railroad Com.*, 13 Cal.2d 89, 110-119 [87 P.2d 1055]; *Pacific Tel & Tel. Co.* v. *Public Utilities Com.*, 34 Cal.2d 822, 829 [215 P.2d 441].) With respect to the question of whether the rates charged are discriminatory the commission, as we have seen, has made conflicting findings, and, in view of the conflict, there is no decision that an unreasonable difference existed. Moreover, there are no findings as to the time during which such a difference, if any, existed or as to the amount, if any, of the discrimination. Under the circumstances it would be premature for us to consider any of the remaining questions raised by the parties.

The orders of the commission are annulled.

Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

CONCURRING AND SUPPLEMENTING OPINION, IN ACCORDANCE WITH THE DIRECTIONS IN SECTION 53 OF THE CODE OF CIVIL PROCEDURE*

McCOMB, J.—I concur in the judgment of this court which annuls the orders of the commission, for the following reasons:

Petitioner filed a complaint against the Union Pacific Railroad Company (hereinafter called ''Union Pacific''), a common carrier railroad. It alleged that Union Pacific's rates for iron ore from Dunn to Kaiser, a distance of 130 miles, were less than the rates from Basin to Colton, a distance of 131 miles, and were therefore discriminatory.

Petitioner alleged that it maintained a mill for the production of cement at Colton, California, and an iron ore mine at Basin, California; that shipments of iron ore moved from Basin to Colton over the Union Pacific lines; that Kaiser is a point near Fontana, California, a few miles west of Colton; that there is a steel mill at Kaiser which uses iron ore shipped from Dunn over the lines of Union Pacific from Dunn to

---

*The Legislature has directed this court, by section 53 of the Code of Civil Procedure, that ''if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case.''

Colton, thence over the lines of Southern Pacific Company to Kaiser or over the Atchison, Topeka and Santa Fe Railway Company lines from Dunn to Kaiser via San Bernardino.

The Union Pacific tariff rate on iron ore from Basin to Colton is $1.9824 per long ton, with a minimum of 100,000 pounds per car and 1,000 long tons per shipment; the Union Pacific also maintains a tariff rate from Dunn to Kaiser with the same carload and shipment minimums at the rate of $1.736 per long ton.

The complaint alleged the rate from Basin to Colton was discriminatory and subjects Colton and petitioner to undue prejudice and grants to Kaiser and to receivers of freight at Kaiser undue preference to the extent that the rate from Basin to Colton exceeds the rate from Dunn to Kaiser, and prayed for (1) reparation for all shipments made and to be made in 1955 under said higher rate from Basin to Colton, and (2) the elimination of discrimination in the future.

On May 19, 1955, respondent commission (hereinafter called the "commission") heard the case and on December 5, 1955, rendered a decision, finding as follows: "It is concluded, therefore, and the Commission so finds, that the assailed differential has not been shown to be unduly discriminatory . . ." and thereupon dismissed the complaint.

Petitioner filed an application for a rehearing, which on February 21, 1956, the commission denied, making the following finding: "However, upon reconsideration of the facts, the Commission is of the opinion that they present a situation which should not be allowed to continue. Therefore, the defendant is directed within sixty days from the date hereof to review the rates involved, looking toward the *filing of rates which will not reflect an unreasonable difference between the rates from Dunn to Kaiser as compared with those from Basin to Colton.*" (Italics added.)

These principles are here applicable:

(1) The commission has the duty to make findings and to determine questions of fact (Southern Pacific Co., 10 C.R.C. 354, 356);

(2) The general rule is that the findings and conclusions of the commission on questions of fact are final and not subject to review by this court* (Pub. Util. Code, § 1757; *Live Oak*

---

*An exception to the general rule is: In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, this court shall exercise an independent judgment on the law and

*Water Users' Assn.* v. *Railroad Com.,* 192 Cal. 132, 138 [2] [219 P. 65]);

(3) Our review cannot extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of petitioner under the Constitution of the United States or of the State of California (*Live Oak Water Users' Assn.* v. *Railroad Com., supra; Market St. Ry. Co.* v. *Railroad Com.,* 24 Cal.2d 378, 398 [150 P.2d 196]); and

(4) When the commission makes an order contrary to findings of fact which it has made, the order, insofar as it is inconsistent and contrary to such facts, is invalid. (*Cf. Southern Calif. etc. Lines* v. *Public Utilities Com.,* 35 Cal.2d 586, 591 [220 P.2d 393].)

This question is presented: *Did the commission make a finding of fact that there was an unreasonable difference between the rates charged by Union Pacific from Dunn to*

---

the facts, and the findings or conclusions of the commission material to the determination of the constitutional question shall not be final. (Pub. Util. Code, § 1760; *Market St. Ry. Co.* v. *Railroad Com.,* 24 Cal.2d 378, 398 [150 P.2d 196].)

Mr. Justice Shenk, speaking for a unanimous court, said in *Market St. Ry Co.* v. *Railroad Com., supra,* at page 398: ''Section 67 of the Public Utilities Act provides for a review by this court for the purpose of having the lawfulness of the order and decision of the commission inquired into. That section restricts the review to a determination of whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the State of California. It further provides that the findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review except as hereinafter noted, and that such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination. The exception to finality is that 'in any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, the Supreme Court shall exercise an independent judgment on the law and the facts, and the findings or conclusions of the Commission material to the determination of said constitutional question shall not be final.' That section also gives the court power to enter judgment either affirming or setting aside the order or decision of the commission.

''That part of section 67 which requires the independent judgment of the court on the law and the facts and withholds from the commission's findings and conclusions finality on constitutional questions, was added by amendment in 1933. This court thereafter recognized that the amendment was responsive to language in certain United States Supreme Court decisions which indicated that the Legislature must provide the means whereby the courts should exercise an independent judgment on the law and the facts when federal constitutional questions were involved. (Citations.)''

*Kaiser, as compared with those charged from Basin to Colton?*

Clearly this question must be answered in the affirmative, for in its order denying a rehearing the commission found expressly that a situation existed "which should not be allowed to continue," and that the rates should be reviewed so that rates could be adopted "which will not reflect an unreasonable difference between the rates from Dunn to Kaiser as compared with those from Basin to Colton." This was a finding of fact which is binding upon this court and which showed that discrimination existed.

There is no merit in the commission's contention that it had found there was not a discriminatory differential between the rates, for the reasons:

*First*: The commission's finding reading: "It is concluded, therefore, and the Commission so finds, that the assailed differential has not been shown to be unduly discriminatory," is a mere conclusion of law (see *Mark Hopkins, Inc.* v. *California Emp. Com.*, 24 Cal.2d 744, 750 [8] [151 P.2d 229, 154 A.L.R. 1081]);

*Second*: The commission's finding that the rates were not discriminatory was a general finding, while its finding that the rates between the stated points "were unreasonable" was a specific finding and therefore was controlling over the general finding. The rule is settled that where in addition to a general finding a specific finding as to a particular fact is made the latter controls in the case of an inconsistency (*Howard* v. *Howard,* 128 Cal.App.2d 180, 186 [9] [275 P.2d 88]; *McKay* v. *Gesford,* 163 Cal. 243, 246 [124 P. 1016, Ann. Cas. 1913E 1253, 41 L.R.A.N.S. 303]); and

*Third*: An erroneous conclusion of law which is drawn from and based upon specific facts found to be true cannot stand if the specific facts upon which the conclusion is based do not support it (*Falk* v. *Falk,* 48 Cal.App.2d 762, 769 [8] [120 P.2d 714]). This rule is likewise here applicable.

In the instant case the commission determined that there was an unreasonable difference between the rates from Dunn to Kaiser as compared with those from Basin to Colton. This is obviously a finding of ultimate fact as distinguished from a conclusion of law. The finding of the commission that there was no discrimination was nothing more than a conclusion of law. Therefore, since the conclusion was contradicted by specific facts found, to wit, that there was an unreasonable difference between the rates from Dunn to Kaiser

as compared with those from Basin to Colton, the conclusion of law must be disregarded.

A question of preference and prejudice *between persons* was not raised in petitioner's application for a rehearing. Therefore, the subject is not and cannot be an issue before this court, and arguments addressed to this subject are not relevant.

Petitioner points out specifically that the issue involved in the present case was discrimination *between places,* which is forbidden by the law of California, without regard to whether there is competition between shippers in the localities in question or not.

Section 21 of article XII of the California Constitution reads in part as follows: "No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company *between places or persons. ...*" (Italics added.) It is to be noted that the constitutional provision is written in the disjunctive and specifically prohibits discrimination in transportation charges by a railroad between places. Likewise, section 453 of the Publc Utilities Code (formerly section 19 of the Public Utilities Act) forbids a public utility from charging unreasonable differences as to rates between localities. Section 453 reads in part as follows: "No public utility shall establish or maintain any unreasonable difference as to rates, charges, service, facilities, or in any other respect, either as between localities. ..."

There is thus no merit in the contention of the commission and Union Pacific that since petitioner is a cement manufacturer at Colton and is not in competition with the steel mill at Kaiser it has no right to complain of the difference in rates on the same commodity charged from Dunn to Kaiser and Basin to Colton and that it cannot collect back by way of reparation the excessive charges it has paid the railroad for transportation already performed under the rate in question. This conclusion results from a confusion of undue preference and prejudice *as to persons or corporations* with discrimination in rates *between places or localities.*

As to these matters the only question involved in the instant case is that of competition between places or localities. There is no issue as to competition between shippers. It is obvious that unless this distinction is made there could never be discrimination between places or localities unless the complaining parties in those places were in commercial competition with each other.

The commission by its decisions has heretofore recognized the distinction between preference and prejudice as to persons or corporations and discrimination in rates between places or localities. In *Sacramento Box & Lbr. Co.* v. *Southern Pac. Co.*, 30 C.R.C. 338, the commission required rates on box shook from Sacramento to various points consuming this product to be related to the rates on shook from Northern California origins, such as San Francisco, San Jose, Vallejo Junction, Port Costa, etc. The existing rates from Sacramento, which were higher, were held to be discriminatory.

In *South San Francisco Chamber of Commerce* v. *Southern Pac. Co.*, 18 C.R.C. 997, the commission considered a complaint by the city of South San Francisco against the railroad for refusing to include South San Francisco within the switching limits of San Francisco. South San Francisco Chamber of Commerce alleged that the community of South San Francisco was being discriminated against because of the lesser cost of switching at San Francisco, at Oakland and points in Alameda County. The commission at pages 1005 et seq., said:

"The record shows that transportation between San Francisco and South San Francisco is a switching service similar in character to that performed between Oakland Wharf and Elmhurst and while the evidence adduced does not warrant a finding that the 30-cent zone at San Francisco should be extended to include South San Francisco, or that the 60-cent rate between San Francisco and South San Francisco is of itself unreasonable, it does show conclusively that a discriminatory and prejudicial situation has been created by the maintenance of a 30-cent rate between Oakland Wharf and Elmhurst with concurrent charge of 60 cents between South San Francisco and San Francisco."

Again, at page 1007: "The relative situation of South San Francisco is the same as that in connection with business on which defendant secures a line haul, and for like reasons the conclusion must be reached that the charge for transportation between South San Francisco and interchange with the Santa Fe and Western Pacific at San Francisco is unduly prejudicial and discriminatory, to the extent that it exceeds the charge for switching similar traffic at San Francisco and Oakland."

See also *Albers Bros. Milling Co.* v. *Southern Pac. Co.*, 31 C.R.C. 95. In this matter the commission said at page 97: ". . . a greater transportation service is performed by de-

fendant from South Vallejo to points on the east side [of the San Joaquin Valley] than is performed from Oakland although the Oakland rates are higher than those from South Vallejo. . . ."

By substituting the applicable names of points involved in the instant case for the names of the points in the Albers case, it is demonstrated that the rate complained of here is discriminatory as between places, and that in this respect the two cases are exactly the same. On a strike-out basis, the foregoing language from page 97 of the Albers decision would read: ". . . a greater transportation service is performed by defendant from ~~South Vallejo~~ Dunn to ~~points on the east side~~ Kaiser than is performed from ~~Oakland~~ Basin to Colton although the ~~Oakland~~ Basin rates are higher than those from ~~South Vallejo~~ Dunn. . . ."

The commission contends in support of its decision that section 453 of the Public Utilities Code and section 21 of article XII of the California Constitution do not seek to prevent *all* differences in rates between places but only *unreasonable* differences or discriminations.

This contention is correct. A discrimination based upon reason and justice can properly exist. However, in the present case there is not such a discrimination based upon either reason or justice. This is demonstrated by the commission's own statement when it says: "However, upon reconsideration of the facts, the Commission is of the opinion that they present a situation which should not be allowed to continue. Therefore, the defendant is directed within sixty days from the date hereof to review the rates involved, looking toward the filing of rates which will not reflect an *unreasonable difference* between the rates from Dunn to Kaiser as compared with those from Basin to Colton." (Italics added.) Since the commission itself has found the difference in rates unreasonable, its arguments predicated upon reasonable difference in rates are irrelevant in this case.

Nor is there any merit in the commission's contention that since petitioner is not in competition with the steel mill at Kaiser there is no undue preference and prejudice as between persons or corporations and therefore there is no case made for reparation for the excessive charges paid by petitioner amounting to over $12,000 on the shipments moved under the rates in question.

The federal cases cited by the commission and Union Pacific are not here pertinent since such cases are concerned with

section 3 of the Interstate Commerce Act (49 U.S.C.A. § 3, subd. (1)). Section 3 of the Interstate Commerce Act is concerned *only* with preference and prejudice. There is no provision in that act similar to the provisions of section 21 of article XII of the California Constitution and the second sentence of section 453 of the Public Utilities Code (see *supra*) forbidding discrimination between places or localities.

Since the record shows without contradiction:

(a) that the operating conditions from Basin to Colton and from Dunn to Kaiser are substantially the same;

(b) that the mileage is almost exactly the same between the points in question,—131 miles from Basin to Colton, and 130.5 miles from Dunn to Kaiser by Union Pacific-Southern Pacific and 130 miles by Union Pacific-Santa Fe;

(c) that neither the commission nor Union Pacific contends that there is any basis "under the transportation standard" which would make the discrimination here involved a reasonable one;

(d) that petitioner paid the excessive charges;

(e) did not pass them on to its customers; and

(f) ultimately bore them;

it is clear that petitioner was entitled to reparation for the damage it suffered, the measure of which damage is the excessive charges paid by petitioner and borne by it. (See *California Adjustment Co.* v. *Atchison etc. Ry. Co.*, 179 Cal. 140, 146 [175 P. 682, 13 A.L.R. 274]; *Southern Pac. Co.* v. *Superior Court*, 27 Cal.App. 240, 251 et seq. [150 P. 397, 404]; *Southern Pac. Co.* v. *California Adjustment Co.*, 237 F. 954, 959 [150 C.C.A. 604]; cf. *Los Angeles County* v. *Pacific Electric Ry. Co.*, 28 C.R.C. 143, 144.)

For the foregoing reasons it is apparent that the commission has not regularly pursued its authority.

Finally, there is no merit in the commission's contention that petitioner radically changed the theory of its case in its reply brief from alleged discrimination between persons to alleged discrimination between places.

Petitioner's opening statement at the hearing before the commission showed that the case was one involving discrimination, preference and prejudice.

Sheets 9 to 11 of Exhibit 2 introduced at the hearing before the commission constitute an informal complaint dated December 23, 1954, addressed to the commission by petitioner. The exhibit reads in part: "We believe that because of the reduction in the rate from Dunn to Kaiser, *the rate from*

*Basin to Colton is discriminatory* . . . We believe that the reason given for the difference in rates is not a sound one. *The law forbids discrimination between communities,* and does not permit differences in rates based on the use to which a commodity is to be put." (Italics added.)

Also, the chief witness for petitioner at the hearing gave the following testimony relative to the relief petitioner sought: "We seek a rate from Basin to Colton equal in volume to the rate from Dunn to Kaiser and in addition we seek reparation for the charges we have paid this year in excess of the charges that would have accrued had an equality of rates with the rates from Dunn to Kaiser been in existence during this year's movement."

Further, petitioner's opening brief filed with the commission after the hearing before it stated, among other things, "Complainant contends that the Basin to Colton rate is *discriminatory as between places or communities,* preferential to Kaiser and prejudicial to Colton, and seeks reparation for the shipments made during this year, which consisted of 47,347.60 long tons, and the removal of the discrimination for the future." (Italics added.)

It is therefore evident that petitioner has consistently throughout this entire cause sought (1) elimination of discrimination between places for the future, and (2) reparation for the excessive charges it had to pay as a result of the discrimination.

Schauer, J., concurred.

Petitioner's application for a rehearing for the limited purpose of providing for costs was denied October 23, 1957. Schauer, J., and McComb, J., were of the opinion that the application should be granted.