[Civ. No. 28854. Second Dist., Div. Two. Jan. 3, 1966.]

MARTIN M. KOFFMAN, Plaintiff and Appellant, v. MODERN-IMPERIAL COMPANY, Defendant and Respondent.

Lawrence & Spelman and William R. Lawrence for Plaintiff and Appellant.

Joseph Henry Wolf and Paul Wyler for Defendant and Respondent.

FLEMING, J.—Plaintiff appeals from a judgment for defendant in an action on an account.

 Plaintiff, assignee of certain accounts receivable of Golden West Livestock Transportation Company, sued to collect $19,000 for trucking services rendered to defendant Modern-Imperial Company during November and December 1961. Modern-Imperial defended on the ground that it had

paid Golden West, plaintiff's assignor, in advance for the trucking services. The trial court allowed defendant's setoff against plaintiff's claim and denied recovery.

On appeal, plaintiff contends the allowance of a setoff based on other transactions and accounts violates California's constitutional and statutory provisions against rate discrimination by common carriers.

Modern-Imperial had formerly been affiliated with Golden West and had sold trucking equipment to Golden West on credit. In May 1961 the owners of Modern-Imperial sold their stock in Golden West to third parties, and the common ownership of the two companies terminated. By November 1961 Golden West still owed Modern-Imperial $42,000 for its trucking equipment, and, in addition, $26,000 for moneys Modern-Imperial had paid Golden West's creditors in order to protect its security interest in the trucking equipment. These payments included $5,500 to the Internal Revenue Service, $9,000 to one Doty, $2,500 to Fruehauf Trailer Co., and $9000 to Bank of America. During November and December 1961 Modern-Imperial obtained from Golden West at tariff rates the trucking services which form the subject matter of this suit.

Plaintiff, in bringing suit as assignee of the accounts receivable, would normally be subject to any defenses, including setoff, which Modern-Imperial had against Golden West, the Assignor. (Code Civ. Proc., § 368; *General Motors Accept. Corp.* v. *Kyle,* 54 Cal.2d 101, 113-114 [4 Cal.Rptr. 496, 351 P.2d 768] ; *Meyers* v. *Bank of America,* 11 Cal.2d 92, 94 [77 P.2d 1084].) Modern-Imperial would be entitled to an equitable setoff of all amounts owed it by Golden West (*Harrison* v. *Adams,* 20 Cal.2d 646 [128 P.2d 9] ; *Highsmith* v. *Lair,* 44 Cal.2d 298 [281 P.2d 865]) unless the allowance of such a setoff would violate California's laws against rate discrimination by common carriers.

The California Constitution provides: ". . . no railroad or other transportation company shall charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or freight, or for any service in connection therewith, between the points named in any tariff of rates, established by said commission than the rates, fares and charges which are specified in such tariff." (Cal. Const., art. XII, § 22.) Substantially the same prohibition against discriminatory transportation rates appears in Public Utilities Code, section 494. These provisions, modeled on the

federal Interstate Commerce and Hepburn Acts (49 U.S.C.A. § 1 et seq.), are designed to insure that carriers operating as public utilities serve the public without rate discrimination, secret preferences, or rebates. (*California Portland Cement Co.* v. *Public Util. Com.*, 49 Cal.2d 171 [315 P.2d 709]; *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621 [268 P.2d 723].) The courts early disapproved of barters for transportation services, holding that payment for such services must be in money, not in property or services. (*Louisville & N.R.R. Co.* v. *Mottley*, 219 U.S. 467 [31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A. N.S. 671]; *Fullerton Lumber Co.* v. *Chicago, M., St.P. & P. R.R. Co.*, 282 U.S. 520 [51 S.Ct. 227, 75 L.Ed. 502]; Annotation, 75 L.Ed. 502.) The courts reasoned that hidden rate discriminations were possible if the parties assigned inflated values to property or services and then exchanged them for transportation services at specified tariff rates. (*Louisville & N.R.R. Co.* v. *Mottley*, 219 U.S. 467 [31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A. N.S. 671]; *Chicago, I. & L. Ry. Co.* v. *United States*, 219 U.S. 486 [31 S.Ct. 272, 55 L.Ed. 305].)

Plaintiff argues that this rule prohibits the use of any credit as an offset to transportation charges because an offset always carries the potential of an inflated valuation and hidden rate discrimination. He stresses the fact that the original credit to Modern-Imperial arose from its sale of trucking equipment to Golden West.

It is true that if the entire credit in this case had arisen out of the parties' own valuation of trucking equipment which they then sought to setoff against charges for freight transportation at tariff rates, the possibility of rate discrimination might be present. (*Law* v. *Railroad Com.*, 184 Cal. 737, 741 [195 P. 423, 14 A.L.R. 249].) But here the credit owing to Modern-Imperial also derived from its cash payment of $26,000 to outside creditors of Golden West. We think these cash advances for the account of Golden West removed any threat of hidden rate discrimination.

The problem of equitable setoff was considered by the United States Supreme Court in *Chicago & N.W. Ry. Co.* v. *Lindell*, 281 U.S. 14, 18 [50 S.Ct. 200, 74 L.Ed. 670]. The Court allowed a shipper's claim for damages to produce occurring during shipment to be setoff against its liability to the carrier for freight charges, saying "There appears to be no reasonable probability that the relegation of shippers to

separate actions for the enforcement of their claims for loss or damage would operate more effectively to enforce the purpose of Congress to prevent discrimination.'' A setoff is clearly proper, therefore, if its recognition carries no danger that it may be used as a medium for evasion of scheduled tariff rates. We see no objection to a setoff of liquidated money advances against freight charges. (*Chicago & N.W. Ry. Co.* v. *Lindell*, 281 U.S. 14 [50 S.Ct. 200, 74 L.Ed. 670].) In the case at bench the existence and amount of the cash advances was definite and certain. The possibility that the earlier sale of trucking equipment might have been made at an inflated valuation can be disregarded, since the liquidated money advances of $26,000 were more than enough to offset the $19,000 which had accrued for trucking services. The trial court correctly allowed the setoff.

Judgment affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied January 24, 1966.